Lee M. WEHMEIER,
Plaintiff-Respondent

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant-Appellant.

No. 38622.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 27, 1977.

Kortenhof & Ely, J. M. Kortenhof, St. Louis, for defendant-appellant.

Rollin J. Moerschel, St. Charles, for plaintiff-respondent.

SMITH, Judge.

Defendant, State Farm Mutual Automobile Insurance Company, appeals from a declaratory judgment that plaintiff Wehmeier's liability was covered by State Farm's policy for an accident in which Wehmeier was involved and for which he has been sued.

Plaintiff, who is the insured under several State Farm policies, was involved in an accident while driving his brother's International flatbed truck,[1] with his brother's permission. Plaintiff was sued by the widow of the driver, and by other occupants of the other vehicle involved in the accident. State Farm denied coverage on the grounds that the vehicle being driven by plaintiff at the time of the accident was not an "automobile" within the meaning of the "non-owned automobile" provisions of the policy.[2]

---

1. The brother's truck is covered by a garage policy of Sentry Insurance Company. Coverage under that policy is limited to $10,000/20,- 000 and is only available if no other insurance is.

2. "Use of non-owned automobiles.

The policy defines automobile as "a four wheel land motor vehicle designed for use principally upon public roads, but "automobile" shall not include a *midget automobile,* nor any vehicle while located for use as a residence or premises." (Emphasis in original).

The vehicle involved in the accident was an International 1600 Lodestar model, usually used for hauling machinery, and was transporting a 5000 pound tractor when the accident occurred. It was licensed by Missouri as a truck with a capacity of 30,000 pounds gross weight. The vehicle has two axles—front and back. There are two tires on the front axle and four on the rear axle. Each end of the rear axle is bolted to a five spoked casting to which is attached two rims separated by a spacer. At the time of the accident there was a tire attached to each rim and this is the manner in which the truck had always been operated during its ownership by plaintiff's brother. However, it is possible, although not normal, to operate the truck with both rims, the spacer and one tire, if the weight is not too great, or to use a single high flotation tire on each end of the rear axle. The latter method might be used if the vehicle were to be used in sand or other material in which it might become mired. The casting with its two rims, spacer and tires operates as a single unit, and the tires on the single casting do not operate independently. The casting is technically called a "Dayton wheel." Plaintiff relied upon a catalogue of International and the testimony above set forth to support its contention that the vehicle in question has four wheels, albeit six tires. The Court relied heavily upon the high flotation tire possibility to support judgment for plaintiff.

◼ State Farm contends that an insurance policy is to be construed as it would be understood by the average layman. That is clearly the position of the Missouri courts.

If the named insured is a *person* or *persons,* and if during the policy period such named insured owns a motor vehicle covered by this policy and classified as 'pleasure and business,' such insurance as is afforded by this policy with respect to the owned motor vehicle under:

If there is a conflict between a technical definition and the meaning normally understood by average laymen, the latter meaning will be applied unless it plainly appears that the technical meaning was intended. *Greer v. Zurich Insurance Company,* 441 S.W.2d 15 (Mo.1969). Webster's Third New International Dictionary defines "wheel" as "A circular frame of metal, wood, or other hand material that may be solid, partly solid, or spoked and that has a hub at the center for attachment to or suspension from an axle on which it may revolve and bear a load, especially on the ground." The dictionary then depicts a "wheel" consisting of a hub, spokes, a rim and a tire, not simply the hub and rim assembly.

◼ While technical experts might define "four wheel" vehicle to include the truck involved here, we do not believe such is the interpretation of the average layman. To the average layman a four wheel vehicle is one with four tires touching the ground. The number of tires touching the ground is synonymous in the average layman's mind with the number of wheels on the vehicle. The trial court recognized this by its statement:

"This Court is aware of the common misuse of the terms 'wheel' and 'tire' when used in connection with the ordinary wheel and tire of a passenger automobile. Frequently the word 'wheel' is used to refer only to the tire. At other times the term 'tire' is used to refer to the entire assemblage. But when pressed for a clear demarcation the ordinary layman will make a distinction between the tire and the wheel. The test applied here to an ordinary layman, with knowledge of all the pertinent facts which he would want to know before making the decision of 'how many wheels', would lead him to conclude that this unit constitutes but a single wheel."

(1) coverages A & B [Bodily injury liability and property damage liability] applies to the use of a *non-owned automobile* by:

(a) the first *person* named in the declarations or, . . . .." (Emphasis in original).

But the test applied by the trial court is to convert the ordinary layman into an expert by teaching him the technical meaning of a term. But having been so taught, the layman is no longer ordinary. It was this very approach which was rejected in *Greer, supra.* There, it was held that the technical legal meaning of "repossession" did not apply and that the ordinary usage of laymen included voluntary relinquishment within that term. If the test used by the trial court had been applied in *Greer,* we doubt the result would have been the same.

Plaintiff invokes the rule that restrictive or exclusionary clauses in an insurance contract are to be strictly construed and if ambiguous, a favorable construction for the insured must be adopted. *Allison v. National Insurance Underwriters,* 487 S.W.2d 257 (Mo.App.1972). It is questionable that such a principle applies here, as the definition used is not a restriction of coverage, but an extension thereof. The insurance policy was issued to cover a described vehicle. An additional coverage is provided to protect the named insured in his occasional usage of "non-owned automobiles" under circumstances similar to those which might be expected in the use of the described vehicle. Such additional coverage does not purport to be a catch-all to provide protection to the named insured for motor vehicle usage which would unwarrantedly yet expectedly increase substantially the risk insured against. The coverage extends to non-owned "automobiles." Without any further definition, it is probable that the word automobile would exclude many vehicles commonly driven by the average insured for pleasure or noncommercial purposes such as pickup trucks, vans, and recreational vehicles. The definition of automobile has therefore been expanded by the description heretofore set out to provide coverage for those types of vehicles.

The evidence indicates that additional tires and wheels are provided on vehicles to increase the load capacity of the vehicle. With such increase in weight goes a concomitant increase in the destruction potential of the vehicle, particularly in the areas of bodily injury and property damage. Such potentials obviously affect the insurance rates. These considerations, of course, do not warrant interpreting a contract more restrictively than provided in the clear language of the policy. They do, however, have some relevance in determining the intention of the parties and the reasonable expectations of the insured.

We do not find a basis for the trial court's conclusion that the truck in question was a four-wheel vehicle under the non-owned automobile coverage. That conclusion is based upon a highly technical definition of wheel or upon a possible, but never utilized, modification of the vehicle. We believe the reasonable conclusion of laymen would be that this is a six-wheel vehicle. As stated in *U-Haul of Southern California, Inc. v. State Farm Mutual Automobile Insurance Company,* 50 Cal.App.3d 665, 123 Cal.Rptr. 628 (1975):

> "In this state of the record, we find no basis for any reasonable expectation by Malone that the policy covering his Toyota two-door sedan would extend to a 16-foot, six-wheel commercial vehicle rented by his friend to transport her household furniture to a new and distant residence." (l. c. 669, 123 Cal.Rptr. 630)

■ It is not the province of the courts to exercise inventive powers to create an ambiguity.[3] Rather, it is the obligation of the courts to give force and effect to contracts as written by making reasonable interpretations to accomplish the intention of the parties. *Jordan v. Equitable Life Insurance Company,* 486 S.W.2d 664 (Mo.App.1972). We do not find the truck in question to be a four-wheel motor vehicle.

■ Plaintiff also contends that Sec. 303.190(3) RSMo 1969[4] applies to the policy

---

**3.** We presume it possible to argue that a vehicle with three wheels and a steering wheel is a four-wheel vehicle, or for an insurance company to contend that a normal passenger automobile with a steering wheel and spare tire is a six wheeled vehicle.

**4.** "Such operator's policy of liability insurance shall insure the person named as insured there-

in question and that under that section exclusion of coverage of other than four-wheel vehicles is void as against public policy. This argument is fully answered in *State Farm Mutual Automobile Insurance Company v. Ward,* 340 S.W.2d 635 (Mo. 1960) and *Gabler v. Continental Casualty Company,* 295 S.W.2d 194 (Mo.App.1956). Simply stated it is that Sec. 303.190(3) does not apply until the policy is certified as proof of financial responsibility. There is no evidence of such certification here.

Judgment is reversed with directions to enter a declaratory judgment that the motor vehicle operated by Lee M. Wehmeier at the time of the accident on June 21, 1975, was not covered by defendant's policies of insurance.

CLEMENS, P. J., and DOWD, J., concur.

in against loss from the liability imposed upon him by law from damages arising out of the use by him of any motor vehicle not owned by him, within the said territorial limits and subject to

the same limits of liability as are set forth above with respect to any owner's policy of liability insurance."