John J. WILLIAMS and Pauline L. Williams, Plaintiffs-Respondents,

v.

NORTH RIVER INSURANCE COMPANY, Defendant-Appellant.

No. 10644.

Missouri Court of Appeals, Southern District, Division Two.

March 28, 1979.

Walter E. Williams, William C. Myers, Jr., Webb City, for plaintiffs-respondents.

L. R. Buehner, Buehner & Buehner, Joplin, for defendant-appellant.

MAUS, Judge.

This is an action on a policy of fire insurance to recover for the loss of a dwelling. The insurer admitted the policy was in force and total loss of the dwelling by fire. It defended upon allegations of (1) the breach of policy conditions and (2) that plaintiffs burned, or procured the burning, of their own property.

The insured dwelling was a rental residence owned by the plaintiffs, who lived across the street. The tenants left the morning of December 30, 1972, for a proposed three day visit in Texas. At about 10:30 p. m. that day, their next door neighbor (who also rented from plaintiffs) saw flames in the kitchen area of the insured dwelling. The fire department was called. The plaintiffs were aroused and came to the scene.

The fire was apparently extinguished while confined primarily to the kitchen area. This is remarkable because extensive preparations had been made to burn the dwelling. A candle in a styrofoam base was in a closet. Paper towel streamers, soaked in kerosene, extended from the candle throughout much of the dwelling. Kerosene had been poured on some furniture. The candle had not been lighted.

The fire department personnel and police officers (who were investigating because of the evidence of arson) left about midnight. Thereafter, John J. Williams (who ironically was a city fireman) returned one or two times to check on the premises. He intended to go again at 3:00 a. m., but was awakened at about 2:00 a. m. as his wife had been aroused by a second fire at the dwelling. The second fire resulted in a total loss.

In view of the limited issues presented for consideration, an extensive review of the evidence in this well tried case is not necessary. Suffice it to say the defendant insurer made a submissible circumstantial case that plaintiffs burned, or procured the burning of their dwelling. However, the evidence also developed suggestive circumstances pointing to the tenants who were having financial problems, experiencing marital discord and had a few days before the fire insured their household effects for $10,000.00. There was also some evidence of threats toward the husband tenant arising from his job as a door man at a bar. Evidently as a result of the divergent circumstances, the jury concluded defendant had not met its burden of proof and returned a verdict for the plaintiffs. Defendant appeals and seeks reversal on two points (1) a breach of a policy requirement and (2) undue restriction of argument.

One of the many "Requirements in case loss occurs" provided in the policy was the following common provision: "The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and *submit to examinations under oath* by any person named by this Company, *and subscribe the same*; . . . ." (Our emphasis)

Defendant insurer, through counsel, requested that the plaintiffs appear for examination. They did appear and each, in turn, was placed under oath and extensively examined in the presence of a stenographic reporter who administered the oaths. Some delay was encountered in the preparation of the transcripts of the examinations. Some difficulties were encountered in respect to the plaintiffs signing the transcript of their respective statement. The plaintiffs did, however, sign their respective transcript at the end thereof and returned them to defendant's counsel. However, these signatures were not "notarized".

The defendant has consistently, through correspondence, its answer, its after trial motion and brief in this court, maintained that plaintiffs did not comply with this policy requirement. Defendant insists the signatures must have been under oath, as in an affidavit. The trial court, in pretrial and after trial orders, determined plaintiffs had been examined under oath and did sign the transcripts at the end and that was all the policy required. We agree.

There can be no doubt but what plaintiffs did submit to examination under oath. What was required by "and subscribe the same"? We believe the meaning to be such that we are not called on to resort to rules of construction. "Subscribe" is defined: "To write (as one's name) underneath." Webster's Third New International Dictionary. *Wehmeier v. State Farm Mut. Auto. Ins. Co.*, 556 S.W.2d 739 (Mo.App.1977). This is exactly what was done by the plaintiffs.

If the same was necessary, this interpretation can be supported by rules of construction and authorities. The prime rule is that uncertain language in an insurance policy is to be construed against the company. *Boling v. State Farm Mutual Automobile Ins. Co.*, 466 S.W.2d 696 (Mo.1971).[1] A further guide is that where a term is used in one phrase of a policy, its absence in another phrase is significant. *Otto v. Young*, 227 Mo. 193, 127 S.W. 9 (1910); *Maupin v. Southern Surety Co.*, 205 Mo. App. 81, 220 S.W. 20 (1928); 17 Am.Jur.2d, Contracts, § 247, p. 637. In this connection, defendant's policy in regard to proof of loss says it shall be "signed and *sworn to*."

1. "In the absence of a policy definition, any doubt or ambiguity resulting over the meaning of a policy provision must be resolved in favor of the insured and against the insurer." *Cotton Belt Ins. Co., Inc. v. Hauck*, 424 F.Supp. 570, 575 (E.D.Mo.1976).

(Our emphasis) No such requirement is made in connection with the examination.

The authorities do not regard the signature, as distinguished from the examination under oath, as a critical matter. "When Mrs. Barbour appeared before the notary public and submitted to an examination under oath, there was a substantial compliance with this provision of the policy. The insurance company has obtained the information which it was designed to secure. The signing of the written result of the examination was a purely incidental matter." *Barbour v. St. Paul Fire & Marine Ins. Co.*, 101 Wash. 46, 171 P. 1030 (1918).

The requirement has been held to be satisfied by a signing after suit was filed, *Agricultural Ins. Co. of Watertown, N. Y. v. Iglehart*, 386 P.2d 145 (Okl.1963); *Barbour v. St. Paul Fire & Marine Ins. Co.*, supra; or by an offer to sign contained in a petition, *Potomac Fire Ins. Co. v. Turner*, 67 S.W.2d 1080 (Tex.Civ.App.1934).

■ In closing argument counsel for defendant stated that lawyers work on a contingent fee basis (an objection to that remark being sustained) and then continued with an argument to the effect that once a lawyer was hired, "how do you turn it off?" (an objection was overruled) and counsel continued to the effect that a dismissal of the lawsuit would be an admission. The only portion of this line of argument to which an objection was sustained was the statement that lawyers represent people on a contingent fee basis. This was improper argument because it is improper to impugn the motive of counsel and it was beyond the scope of the evidence. *Davis v. City of Independence*, 404 S.W.2d 718 (Mo. banc 1966); *Cook v. Cox*, 478 S.W.2d 678 (Mo. 1972); *Speicher v. Dunn*, 530 S.W.2d 45 (Mo.App.1975). The trial court did not err in sustaining an objection to this portion of the argument.

■ Counsel for defendant also argued that the action was being defended "because every insurance company has an obligation to its stockholders and policyholders to decline bum claims and the reason they

have that obligation is because the policyholder's premiums are determined by the claims that they pay." An objection was sustained and counsel instructed not to pursue that argument any further.

It is generally held improper for defense counsel to make an argument appealing to self-interests of the jurors. Annot., 33 A.L. R.2d 442. In an action in which back injuries were alleged, statements of defense counsel that it was the "type of thing that places a burden upon us all" and that "causes the increase in the high cost of living" were improper, *Lukich v. Angeli*, 31 Ill. App.2d 20, 175 N.E.2d 796 (1961). The statement of the railroad's attorney in closing argument relative to the effect that a verdict against the railroad would have upon business and upon jurors as individuals and as owners of businesses, as farmers, and as owners of property, was error requiring a new trial, *Clark v. Grand Trunk Western Railroad Company*, 367 Mich. 396, 116 N.W.2d 914 (1962). It has also been held to be improper to argue against a plaintiff's verdict because: it would result in numerous suits against the city, *Jones v. Kansas City, Missouri*, 76 S.W.2d 340 (Mo. 1934); that a judgment would be paid from tax funds, *Massoni v. State Highway Commission*, 214 Kan. 844, 522 P.2d 973 (1974); that the judgment would be paid by the taxpayers of a city, even though the city was in a county other than that in which the case was being tried, *Huggins v. City of Hannibal*, 280 S.W. 74 (Mo.App.1926); that the taxpayers would pay an award to a condemnee, *Township of Saginaw v. Stanulis*, 68 Mich.App. 314, 242 N.W.2d 769 (1976).

Argument that an award to a claimant would increase her employer's insurance premiums and thereby prices charged by the employer has been held to be prejudicial and not curable. *Waddell v. Charter Oak Fire Insurance Company*, 473 S.W.2d 660 (Tex.Civ.App.1971). A similar argument was also condemned in *Finney v. G. C. Murphy Company*, 400 Pa. 46, 161 A.2d 385 (1960). We find no case in Missouri directly deciding the point. However, in a case involving the propriety of a retaliatory argument, it was said, "It may be conceded

that argument by plaintiff's counsel on the subject of increasing insurance premium rates would have been improper and objectionable in the absence of any remark to provoke it." *Hartford Accident and Indemnity Company v. List*, 424 S.W.2d 761, 766 (Mo.App.1968). The control of argument is largely within the discretion of the trial court. *St. Louis County v. Szombathy*, 497 S.W.2d 144 (Mo.1973). Trial court did not err in sustaining the objection.

The judgment is affirmed.

BILLINGS, P. J., and HOGAN, J., concur.