Austin HAYNES, by next friend Marvin HAYNES, et al., Plaintiffs–Appellants,

v.

Roy GREEN, Defendant–Respondent.

No. 15485.

Missouri Court of Appeals,
Southern District,
Division Two.

April 21, 1988.

Winston Buford, Eminence, for plaintiffs-appellants.

Robert W. Schroff, John G. Newberry, Schroff, Glass & Newberry, P.C., Springfield, for defendant-respondent.

FLANIGAN, Judge.

Plaintiff Austin Haynes, a minor, and his parents brought this action against defend-

ant Roy Green for personal injuries sustained by Austin as a result of an incident which occurred on May 31, 1984, on the premises of an elementary school. Austin was a fourth grade student at the school and defendant is its principal.

The petition alleged that Greg Buckner, a fellow student, applied to Austin "a sleeper hold" which "caused [Austin] to pass out and fall to the floor causing serious and permanent injuries to [his] face and head." The petition alleged negligence on the part of the defendant in failing to exercise ordinary care to supervise the students and to prohibit them from applying sleeper holds on fellow students. Plaintiffs Marvin Haynes and Virginia Haynes, parents of Austin, sought damages on their derivative claim. The jury found all issues in favor of the defendant. Plaintiffs appeal.

■ Plaintiffs' first point is that the trial court erred in overruling two objections made by plaintiffs' counsel to portions of the closing argument of defense counsel in that the challenged portions were "references to the jurors' own children or grandchildren [and] were improper and prejudicial in that [they] personalized the case for the jurors and thus impaired the jurors' ability to act as impartial triers of fact in the case."

The record on appeal does not contain any of the evidence. The verdict-directing instruction, given on behalf of plaintiff Austin Haynes, told the jury to return a verdict in his favor if the jury believed: (1) defendant knew or by the use of ordinary care could have known that Greg Buckner had previously applied a sleeper hold on another student, (2) defendant knew or by the exercise of ordinary care could have known that applying a sleeper hold on a student created an unreasonable risk of injury to the student, (3) defendant either failed to adequately supervise Greg Buckner or failed to see that Greg Buckner was adequately supervised, (4) defendant was negligent in either of the foregoing respects, and (5) plaintiff sustained damage as a direct result of such negligence.

During the final argument of defendant's attorney, Robert W. Schroff, the following occurred:

"MR. SCHROFF: ... [W]e heard really very little about Greg Buckner's activity, just very little. But we did hear about play day. I don't recall any evidence about Greg Buckner and any hold, call it sleeper hold if you will, before play day.

Now on play day what do we hear? The children are out in the playground, no recesses during the day. During the afternoon they are brought in. Mrs. Reece comes in with her fourth graders. She separates them, drinking fountain, restroom.

Now what happens in that restroom? I don't know. I wasn't there. Mr. Buford wasn't there. Mrs. Haynes and Mr. Haynes, they were not there. But what did happen? Well now when we try to sift this out and we listen to what people tell us, first off we should go, I'm sure, to Austin. And so I asked his parents, 'Mrs. Haynes, what did he tell you took place in the restroom?'

'Well, he was bad hurt. I just didn't feel that I could talk to him about it. Well, he was upset. Things bothered him. He was hurt bad.'

'Well, Mr. Haynes, what did your boy tell you?'

'Well, I just didn't talk to him about it. He was upset.'

Now, ladies and gentlemen, when you serve on a jury there's one thing you don't have to leave at home and that is your common sense. That's why you are selected to serve on a jury. You are adults. You have experience. You can make decisions. You can bring things together and you can rationalize. In this particular case there are those of you that have children. I'm sure there may be a grandchild or two in the group. Now when things happen to your children I'm convinced, at least with mine—

MR. BUFORD: Judge, we object to counsel equating what happened to Greg

Buckner (sic) with anybody who may have a child or grandchild on this jury.

THE COURT: Overruled.

MR. SCHROFF: When I have problems or at least experience is with my children when they were young I asked them, 'What happened? What were you doing? What took place?'

Well, obviously we don't have anything coming from Austin. He really doesn't recall. But we do know one thing. When Mrs. Haynes got around to explaining it, it was an assault, an attack from behind. It was persecution of my child."

Later in his final argument, Mr. Schroff discussed the medical testimony. The following then occurred:

"MR. SCHROFF: ... Now Mr. Buford said this is going to last forever. What does Dr. Witherspoon tell you? He tells you the baby teeth, temporary teeth, whatever term you want to use, moved right along because of his age and it has been three or four years since the occurrence, that he now has his permanent teeth. They are in good alignment. He doesn't have I believe it was four molars. He has his twenty-eight teeth that you would expect at this time frame, four molars coming in or he may have one.

Now the fact that you put a retention in a person's mouth to keep spaces between teeth that aren't there from the teeth growing together, that's not unusual. I would hazard a guess that those of you with children going through nine, ten, eleven and twelve have experienced—

MR. BUFORD: Judge, we object again to counsel equating the injuries to my client with any injuries or any children these folks may have.

THE COURT: Overruled.

MR. SCHROFF: Again, use your judgment. Use your judgment. Other than a cut to the chin, a blow and obviously some teeth damaged, temporary teeth, what really did Austin experience? Well, Austin experienced severe fright. There isn't any question about it because when he knew he was going to have to tell Mama and Papa what happened to him at school and they were going to come and get him, I'm sure he did have some pain. But I bet you he had a world of pain because here he is. He's going to have to explain what happened to him."

The trial court has broad discretion in the matter of closing arguments, and that discretion is "not lightly to be disturbed on appeal." *Lewis v. Bucyrus–Erie, Inc.,* 622 S.W.2d 920, 925[6] (Mo. banc 1981). Counsel is accorded wide latitude in arguing facts and drawing inferences from the evidence. Id., 926.

Referring to the two statements to which plaintiffs' counsel objected, plaintiffs' brief says:

"[D]efense counsel on two occasions appealed to the jurors to view the case from the perspective of their children or their grandchildren. These were improper appeals to the sympathy and self-interest of the jurors.... By repeatedly attempting to get the jury to associate their own children with this case, a case that involved the injury of one child by another child, defense counsel undermined the impartiality and objectivity of the jury. This line of argumentation is known as 'the Golden Rule argument' and is disapproved in Missouri law. It is not proper to ask a juror to place himself or herself in the shoes of one of the parties and from that vantage point 'do unto others as you would have others do unto you.' ...."

Plaintiffs rely upon *Williams v. North River Ins. Co.,* 579 S.W.2d 410 (Mo.App. 1979); *Faught v. Washam,* 329 S.W.2d 588 (Mo.1959); *Kelsey v. Kelsey,* 329 S.W.2d 272 (Mo.App.1959); and *Smith v. St. Louis Southwestern Ry. Co.,* 31 S.W.2d 105 (Mo. App.1930). These cases are distinguishable.

In *Williams,* the holders of a fire insurance policy brought an action against the

insurer to recover on a fire loss. The insurer appealed from a judgment in favor of the insureds. The insurer argued that the trial court improperly sustained an objection to a portion of its final argument. The argument was to the effect that every insurance company has a duty to its policy holders "to decline bum claims ... because the policy holders' premiums are determined by the claims that they pay." This court held that the trial court properly sustained the objection and noted the rule that generally it is improper for counsel to make an argument appealing to self-interest of the jurors. In *Faught*, counsel for plaintiff, in final argument, asked the jury, in effect, to put themselves in plaintiff's condition and to employ a mathematical formula in assessing his damages for pain and suffering. This improper argument and other errors, considered cumulatively, constituted prejudicial error. In *Kelsey*, plaintiff's counsel suggested to the women on the jury that they place themselves or their children in the place of the female plaintiff. This argument was improper and, considered with other errors, required reversal. In *Smith*, plaintiff's counsel referred to his client as "this poor orphan boy" and "a poor boy without property and without parents." The argument was held to be improper as constituting a "flagrant" appeal to the sympathy of the jury.

*Williams* involved an argument addressed to the financial interest of the jurors who were policy holders. *Faught* and *Kelsey* involved arguments which invited the jurors to put themselves in the place of the injured plaintiff and to assess damages accordingly. *Smith* involved a direct appeal for sympathy.

"It has been recognized in many cases that arguments by counsel suggesting to the jurors that they place themselves in the position of a party to the cause, or posing to them the question whether they would go through life in the condition of the injured plaintiff, or would want members of their family to go through life crippled, are usually improper, and reversibly errone-

ous." 75 Am.Jur.2d, Trial, § 282. See 70 A.L.R.2d 935 (Argument—taking position of litigant).

In addition to *Faught v. Washam,* supra, and *Kelsey v. Kelsey,* supra, Missouri cases involving the propriety of "golden rule" arguments include *Brownridge v. Leslie,* 450 S.W.2d 214 (Mo.1970); *Edwards v. Lacy,* 412 S.W.2d 419 (Mo.1967); *Fisher v. Williams,* 327 S.W.2d 256 (Mo.1959); and *Merritt v. Wilkerson,* 360 S.W.2d 283 (Mo. App.1962). In *Brownridge, Edwards* and *Fisher* defense counsel, over the objection of plaintiff, asked the jury to place themselves in the position of the defendant. In *Edwards* the supreme court said the argument was improper but, under the circumstances, did not constitute reversible error. In *Brownridge* the plaintiff's counsel objected to the argument but did not request a mistrial. The supreme court held that the argument was "certainly not so inflammatory or improper that this court should intervene and grant a new trial." Similarly, in *Fisher*, the supreme court said the argument was improper but that the trial court did not abuse its discretion in declining to grant a new trial. The court also pointed out that plaintiff had failed to move for a mistrial. In *Merritt* the court of appeals held that the argument was improper and, under the circumstances, prejudicially so.

The difficulty with plaintiffs' position here is that the challenged portions of Mr. Schroff's argument did not constitute a direct appeal for sympathy or an appeal to the pecuniary interests of individual jurors. Considered in context, counsel appeared to be asking the jurors, in weighing the evidence, to use their common sense and their familiarity with human traits and propensities.

██ "Counsel are sometimes permitted to comment on matters of common knowledge, though outside the record." *Bone v. General Motors Corporation,* 322 S.W.2d 916, 925 (Mo.1959). Counsel may properly argue matters of common knowledge, 75 Am.Jur.2d Trial, § 252; 88 C.J.S.

Trial, § 181(b), p. 355, and such matters may be used by jurors in drawing inferences and reaching conclusions from the evidence. *Miller v. Sabinske*, 322 S.W.2d 941, 947[7] (Mo.App.1959). At least some conduct on the part of children is so customary as to constitute a natural proclivity and a matter of common knowledge. *Haberly v. Reardon Co.*, 319 S.W.2d 859, 869[11] (Mo. banc 1958).

In the segment challenged by the first objection, counsel seemed to be arguing that when a child is injured and the parent is not present, it is natural for the parent to ask the child what happened. The evidence apparently was that neither parent asked Austin what had happened. At least Mr. Schroff's argument is subject to that construction, and there is no claim it was not supported by the evidence. The trial court had the benefit of knowing what the evidence was, and this court does not. That segment of the argument appears to be a proper challenge to the credibility of Mr. and Mrs. Haynes after they had testified to conduct which may be inconsistent with what an ordinary parent would do with respect to eliciting information from his injured child concerning the circumstances of his injury.

With respect to that portion of Mr. Schroff's argument to which the second objection was posed, it is unclear to this court, having no access to the evidence, what point counsel was trying to make. It seems to be an attempt to ask the jurors to use their knowledge of ordinary experiences in life to determine the likelihood that Austin sustained serious injuries under the circumstances shown in evidence.

Plaintiffs did not move for a mistrial but their motion for new trial did complain of those two segments. The arguments are subject to the construction that they were appeals to the jury to consider matters of common knowledge and experience and fall short of being "golden rule" arguments. Even if the arguments are viewed as golden rule arguments, the trial court's action in denying plaintiffs' motion for new trial finds support in Brownridge v. Leslie, supra, and Fisher v. Williams, supra. This court concludes that the trial court did not abuse its discretion in overruling plaintiffs' two objections to Mr. Schroff's final argument and in denying plaintiffs' motion for new trial.

Plaintiffs' second point seeks to complain of a third portion of Mr. Schroff's final argument. Plaintiffs made no objection to that portion, nor did they complain of it in their motion for new trial. Plaintiffs' second point has not been preserved for appellate review, and a gratuitous review of it by this court discloses no plain error. Plaintiffs' second point has no merit and is not worthy of further discussion.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.