Gloria J. DELAPORTE, Respondent,

v.

ROBEY BUILDING SUPPLY, INC., Appellant.

No. 57719.

Missouri Court of Appeals, Eastern District, Northern Division.

Feb. 5, 1991.

Marion F. Wasinger, Hannibal, for respondent.

Leritz, Plunkert & Bruning, Thomas J. Plunkert, Joseph E. Denigan, St. Louis, for appellant.

SIMON, Judge.

Appellant, Robey Building Supply, Inc., appeals a judgment entered on a jury verdict in favor of respondent, Gloria J. DeLaporte, on her personal injury claim.

On Saturday, August 24, 1985, at about 12:30 p.m., respondent attended an estate sale in Monroe City, Missouri, accompanied by her son, Ray, and her niece, Lori McLeod (now Stroud). At some point respondent needed to use a restroom, and asked if she could do so in the house on the property where the sale was held. The owners did not want people in the house, so respondent and Ms. Stroud walked to a laundromat about three blocks away.

They testified they turned north onto Winter Street and proceeded to walk past property commonly known as the White Mule Oil Company. Appellant's place of business is located on the corner of Vine and Winter Streets in Monroe City, across from the White Mule Oil property. Appellant was adding a warehouse onto its building during August, 1985. Two hundred thirty-two piece units of two-by-fours were used, which were held together with metal bands. Both respondent and Ms. Stroud testified the grass was high around the sidewalk where they were walking, but they saw wood scraps and "metal strips" on the sidewalk, in the grass, and out in the street. They stepped around and over the debris, but they got to a point where the sidewalk was impassable. Respondent stepped into the grass, caught her foot on something, and fell. She was able to get up and continue walking, with assistance.

The next day, respondent had swelling in her left leg and foot, which got progressively worse. On Thursday, August 29, she called Dr. William E. Rice, who took x-rays and put her on crutches. There was no improvement so she went to Dr. Foreman, who took x-rays, diagnosed her problem as pulled ligaments and tendons, and put a cast on her left foot for a week. She went back to Dr. Rice a week later, who found no improvement. Dr. Rice referred respondent to a group of orthopedic surgeons in Columbia, Missouri in October of 1985. X-rays were again taken, which re-

vealed a hairline crack in the bone of her left big toe. She saw Drs. Payne, Quinn, and Carter from the group in Columbia, all orthopedic surgeons, several times between October, 1985 and June, 1986.

Her condition did not improve significantly, and she was seen by Dr. Garth Russell, also an orthopedic surgeon in the Columbia group, on June 27, 1986. Dr. Russell diagnosed her condition as reflex sympathetic dystrophy and sesamoiditis, meaning damage to the nerve endings in her toe causing inflammation, pain, and swelling in her left foot and leg. Respondent was also hospitalized at one point during Dr. Russell's care for swelling that extended to her thigh. It was his opinion that the damage was permanent, and due to her accident on August 24, 1985.

Respondent testified the family owned and operated a farm, and her role in the operation was to breed and raise hogs. Because she cannot walk or stand for long periods of time she can no longer care for the hogs, so the family has had to reduce that area of their business. She can no longer raise a garden, lift heavy objects, do laundry or heavy cleaning, drive, mow grass, exercise, wear dress shoes, shop or bathe without assistance, or do anything requiring two hands.

Respondent filed her petition on November 14, 1988, against appellant and the City of Monroe. The owners of the White Mule Oil property were apparently defendants at one time, but settled before trial. Trial was held on September 28–30, 1989. The jury returned a verdict for the City, and against appellant. It awarded respondent $60,000, but found her to be twenty-five percent at fault. The trial court entered judgment accordingly, and appellant appeals.

Appellant raises ten points on appeal contending that the trial court erred in: (1) allowing respondent to cross-examine Robert Robey concerning conversations with Robey's attorney in that the conversations were not admissible evidence because they were irrelevant, immaterial, were offered to prejudice the jury and were revealed under order of the court in gross violation of the attorney-client privilege; (2) admitting respondent's evidence concerning appellant's insurance in that insurance was injected solely to prejudice the jury because there was no issue presented to the jury on which the existence of insurance was relevant or material; (3) sustaining respondent's motion to prohibit appellant from calling witnesses Wayne Redman and Michael Robey and from questioning witness Paul Walker concerning the condition of the sidewalk in that there was no conduct on the part of appellant to justify such action because appellant properly responded to all discovery and identified these witnesses three and one-half months prior to trial. The trial court further erred in denying appellant's motion for mistrial made during respondent's closing argument when respondent referred repeatedly to appellant's failure to call these witnesses in that respondent's comments unfairly prejudiced the jury because respondent had moved the court to prohibit appellant from calling those very witnesses; (4) overruling respondent's motions for directed verdict and judgment n.o.v. in that there was insufficient evidence for the jury to conclude appellant created the obstruction in issue; (5) submitting the verdict directing instruction, No. 8, in that it failed to hypothesize that the negligence in question was committed by an agent of appellant acting within the course and scope of his agency, which is a required element of respondent's case because where agency is disputed the verdict directing instruction must hypothesize the existence and course and scope of such alleged agency relationship; (6) admitting into evidence respondents' items of special damages in that those items were not properly in issue because they were not pleaded as damages and were not properly recoverable by respondent; (7) excluding the testimony of Dr. William E. Rice in that Dr. Rice's testimony was relevant and material to the issues of causation and damages because it showed respondent had a pre-existing disability to the same part of the body she allegedly injured in this incident and it also impeached her; (8) admitting Exhibits 7 through 10 in that there was an improper foundation laid for their

admission because they were merely letters from Dr. Russell to respondent's attorney and the trial court compounded the error by allowing the exhibits to be passed to the jury in that the showing of these exhibits unduly prejudiced appellant because respondent's attorney had highlighted portions of the records with yellow highlighter; (9) denying appellant's motion for a new trial in that appellant did not receive a fair trial because of the cumulative effects of all of the errors of the trial court and respondent's counsel; and (10) denying appellant's motion to amend the judgment in that appellant was entitled to have the judgment reduced because respondent had already received $10,000.00 in settlement from a negligent joint tort feasor who was not a defendant at trial.

We find appellant's fifth point dispositive of this appeal, wherein appellant contends the trial court erred in submitting Instruction No. 8 because the instruction hypothesized that negligent acts were committed by appellant, i.e., placing pieces of lumber and debris close to or on a public walkway and public street. Paragraph 6 of respondent's petition alleges "... Defendant Robey Building Supply, Inc. at said time and place placed debris, metal strippings, and other foreign material upon the sidewalk and adjoining byway making the sidewalk unsafe for the general public." Appellant in its answer denied that allegation.

In addition to the pleadings and answer, the issue of who created a sidewalk obstruction was contested by appellant at trial. Substantial evidence was presented by appellant and/or the City at trial showing that one Herman Schrock was hired by appellant to build a warehouse onto its building. Mr. Schrock provided his own tools and crew, while appellant furnished the materials and a diagram.

There was no written contract between them, but Mr. Schrock has worked for appellant in this capacity several times previously. Mr. Bob Robey testified he checked on the building progress frequently, and had Mr. Schrock correct things that were not done to specifications. Mr. Schrock would clean up the area after work was

completed, and appellant would follow up on that if needed. There was ample evidence appellant moved materials in preparation of construction, but no evidence was adduced as to who placed the debris on or near the sidewalk.

Appellant objected at trial on a number of grounds to Instruction No. 8, patterned after MAI 22.02, specifically stating there was no evidence adduced as to who placed the debris on the sidewalk, or further whether it was done by an agent, servant or employee of appellant. Nonetheless, respondent submitted and the trial court gave Instruction No. 8, the verdict director, which read:

> In your verdict you must assess a percentage of fault to defendant Robey Building Supply, Inc. whether or not plaintiff Gloria DeLaporte was partly at fault if you believe:
>
> First, defendant Robey Building Supply, Inc. created an obstruction by placing pieces of lumber and debris close to or on a public walkway and public street, and
>
> Second, that such obstruction was so close to or on a public sidewalk and public street that persons using the sidewalk and street in the exercise of ordinary care were exposed to a danger of falling, and
>
> Third, defendant Robey Building Supply, Inc. knew or should have known of such danger, and
>
> Fourth, defendant Robey Building Supply, Inc. failed to use ordinary care to barricade or remove the obstruction, and
>
> Fifth, as a direct result of such failure plaintiff Gloria DeLapote was injured.

Appellant contends the instruction was given in error because it assumes as true a controverted fact, namely, who placed the debris on or near the sidewalk. It is well settled that in order to reverse a jury verdict on grounds of instructional error, the instruction in question must have misdirected, misled, or confused the jury. *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682[4] (Mo. banc 1986). Failure to submit an instruction a party is entitled to is error, warranting reversal if the merits of the

action are materially affected. *Allison v. Sverdrup & Parcel and Assoc., Inc.*, 738 S.W.2d 440, 454[9] (Mo.App.1987). The burden of proving that no prejudice resulted from instructional error rests with the proponent of the instruction. *Hall v. Cooper*, 691 S.W.2d 507, 509–10[3] (Mo.App. 1985).

■ At trial appellant contested the source of the sidewalk debris, Mr. Schrock's relationship to it, and its responsibility for Mr. Schrock's actions. It is obvious these are material facts, and the omission of them in the verdict director prejudiced appellant. If a material fact is controverted the jury must be required to find that fact, and failure to do so is prejudicial error. *Loomstein v. Medicare Pharmacies, Inc.*, 750 S.W.2d 106, 112[5, 6] (Mo. App.1988). The controverted fact whether or not appellant placed the debris is naturally present. It is the additional controverted facts whether Schrock placed the debris on the walkway, and his relationship to appellant, that the verdict directing instruction omits. The jury was never asked to resolve this controversy. Therefore, we must reverse and remand for a new trial.

Although we reverse and remand this cause for a new trial, we shall address appellant's remaining points which could occur on retrial.

Appellant's first point alleges the trial court erred in allowing respondent's cross-examination of Mr. Bob Robey concerning communications with appellant's attorney because the evidence was irrelevant, immaterial, prejudicial, and violative of the attorney-client privilege.

■ We initially note a trial court has broad discretion in admitting evidence, which will not be overturned absent abuse of that discretion. *Iota Management Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 412[7] (Mo.App.1987). We also must initially address respondent's position on this issue. Respondent argues that appellant's counsel was counsel for Robey Building Supply, not Robert Robey, and therefore the attorney-client privilege cannot apply.

■ A corporation may claim an attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 608[13] (8th Cir.1978). The privilege covers counsel's communications with both top management and lower level employees. *Weintraub*, 471 U.S. at 348, 105 S.Ct. at 1991, 85 L.Ed.2d at 378. The lower level employees are covered if:

(1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Meredith*, 572 F.2d at 609.

■ Mr. Bob Robey was vice president of Robey Building Supply, Inc., and managed the lumber yard portion of the business. As such he was both top management and an employee, and we find his communications to appellant's counsel concerning this litigation were covered by the attorney-client privilege.

The issue here, however, is the application of the privilege to the following exchange:

Q: (MR. WASINGER): ...

Is that what you said?

A Read that again. It's confusing.

Q This is because you didn't make it up.

\* \* \* \* \* \*

MR. PLUNKERT: I'm asserting the attorney/client privilege because Mr. Robey and I conferred on how to respond to these pleadings.

THE COURT: Overruled. The Court's going to permit him to answer.

Q (BY MR. MARION WASINGER) Did you make up this answer number 3? You said you didn't understand it, but you swore it was true.

A  Is this Walker's premises?

Q  Yes, sir.

A  Well, I can't confirm it.

Q  What I'm saying: Is that the answer you gave and signed?

A  Yes.

Q  And signed your name to?

A  Yes.

\*    \*    \*    \*    \*    \*

Q  (BY MR. MARION WASINGER) That's right.  And that's the answer that you gave?

A  Yes, sir, I guess so.

Q  As your lawyer said, you did that with the assistance of your lawyer.

MR. PLUNKERT:  Again I object. He's violating the attorney/client privilege by asking him how he came to answer these questions.  It's clearly improper.

MR. MARION WASINGER:  He's already said it, made the voluntary statement.

MR. PLUNKERT:  I did not.  I made the objection.  After it was overruled I made a statement.

THE COURT:  Overruled.  Let's get on with it.

Appellant cites *Carlyle v. Lai,* 783 S.W.2d 925 (Mo.App.1989), in support of its position.  There, in a wrongful death case defense counsel asked the plaintiff on cross-examination whether she had hired an attorney fifteen days after her son's death.  Plaintiff's counsel objected, citing irrelevancy and immateriality, not an attorney-client privilege.  We do not find *Carlyle* persuasive.

■■■■  In Missouri, the attorney-client privilege is limited to protecting communications.  *State ex rel. Great Am. Ins. Co. v. Smith,* 574 S.W.2d 379, 385[6] (Mo. banc 1978).  The question is whether counsel's actions in preparing written admissions is privileged.  Other states have held that some acts of attorneys performed in the course of employment are not privileged. *Branch v. Greene County Board of Educ.,* 533 So.2d 248, 255[16] (Ala.Civ.App.1988) (fact that attorney participated in drafting a settlement agreement was not privi-

leged); *Cheyenne Constr., Inc. v. Hozz,* 102 Nev. 308, 720 P.2d 1224, 1226[6] (1986) (attorney's testimony concerning acts performed for a client was not privileged); *Hartsell v. Hartsell,* 99 N.C.App. 380, 393 S.E.2d 570, 578[13–14] (1990) (mere fact that communication occurs is not privileged); *Hoopes v. Carota,* 142 A.D.2d 906, 531 N.Y.S.2d 407, 409[2] (App.Div.1988) (mere fact that communication occurs is not privileged).  Several jurisdictions have also held the attorney-client privilege requires narrow construction, as it excludes otherwise relevant and competent evidence. *See, e.g. United States v. Weger,* 709 F.2d 1151, 1154 (7th Cir.1983); *In re Grand Jury Proceedings,* 575 F.Supp. 197, 199[2] (N.D.Ohio 1983); *State v. vonBulow,* 475 A.2d 995, 1005–6[6] (R.I.), *cert. denied,* 469 U.S. 875, 105 S.Ct. 233, 83 L.Ed.2d 162 (1984); *Consolidation Coal Co. v. Bucyrus–Erie Co.,* 89 Ill.2d 103, 59 Ill.Dec. 666, 432 N.E.2d 250, 257[5] (1982); *Sapp v. Wong,* 62 Haw. 34, 609 P.2d 137, 140[3] (1980).

We find these holdings to be consistent with Missouri's rule that only communications between an attorney and his/her client are privileged.  Appellant's first point is therefore without merit.

Appellant's third point asserts the trial court erred in refusing to allow appellant to call certain witnesses and ask certain questions of another, and further refusing to declare a mistrial when respondent commented, during closing argument, upon appellant's failure to call those witnesses. Appellant alleges it was prejudiced because respondent moved the court to prohibit appellant from calling the witnesses.

During trial appellant intended to call as witnesses Mr. Mike Robey and Mr. Wayne Redman to testify that during August 1985 they were employed by appellant and saw no debris on the sidewalk then.  Appellant also wished to ask Mr. Paul Walker, owner of the White Mule Oil Company property, about the condition of the property.  Respondent objected to the proferred testimony on two grounds.  First, that the notice of deposition requested the designated agent who had knowledge of the condition,

and appellant produced only Mr. Bob Robey. Second, respondent objected because the names of Mr. Mike Robey, Mr. Redman, and Mr. Walker were not supplied in interrogatories.

The debate centers around Interrogatory No. 7, which asked:

If there were objects, debris or things removed from the sidewalk and adjoining way described in the preceding interrogatory and Petition, state: ...

d. The name and address of each person that was aware of the debris on the sidewalk and adjoining way;

ANSWER: .... d. 7.d) Unknown.

The trial court, while stating there was no bad faith, found the interrogatory "... could have been answered and should have been answered ..." and sustained the objection.

The trial court has broad discretion in admitting or excluding testimony on the basis of nondisclosure in interrogatories. *Brown v. St. Mary's Health Center,* 713 S.W.2d 15, 17–18[3] (Mo.App.1986); *Crompton v. Curtis–Toledo, Inc.,* 661 S.W.2d 645, 649[3] (Mo.App.1983). If the trial court's decision is correct, we shall uphold the decision on any theory. *See Arthur v. Jablonow,* 665 S.W.2d 364, 365[3] (Mo.App.1984). The trial court, however, prior to imposing such a sanction, must first find prejudice. *Crompton,* 661 S.W.2d at 650.

Here, appellant was asked in interrogatories to supply the names and addresses of persons with knowledge of debris on the sidewalk. Appellant argued at trial they responded under oath, "unknown," because they knew of no one who knew there *was* debris, while Mike Robey and Wayne Redman, and presumably Paul Walker, were prepared to testify there was *no* debris.

Appellant argues the trial court's ruling was in error for two reasons. First, appellant points to the fact the trial court specifically found a lack of bad faith in appellant's acts, and argues that is sufficient to escape sanctions, citing *Oventrop v. Bi–State Dev. Agency,* 521 S.W.2d 488 (Mo.App.1975), and *Foster v. Kohm,* 661 S.W.2d 628 (Mo.App.1983) in support. *Oventrop* is inapposite because the interrogatory response complained of was due to misunderstanding the question asked. *Foster* is inapposite because the sanctions there were imposed for failure to comply with a pretrial discovery order, which could not be complied with because the party was not furnished with necessary, requested documents.

Appellant next argues respondent was not surprised or prejudiced by the proffered testimony, because the names had been supplied in Mr. Bob Robey's deposition. We have carefully reviewed the record. While the names were mentioned in the deposition, there is no evidence of the contents of their future testimony. "Whether a party is prejudiced by evasive answers to interrogatories so that exclusion of testimony is proper is a matter left to the discretion of the trial court." *McClure v. McIntosh,* 770 S.W.2d 406, 410 (Mo.App.1989). We find no abuse of discretion in that regard.

Appellant also asserts error in the trial court's refusal to sustain objections, requests that the jury be instructed to disregard, and motions for mistrial on two occasions, based on respondent's comments in closing argument to the failure to call the witnesses in question.

It is reversible error for an attorney to ask a jury to draw an adverse inference from failure to produce a witness when the witness was excluded on that attorney's motion. *Calvin v. Jewish Hospital of St. Louis,* 746 S.W.2d 602, 605[4] (Mo.App.1988). Appellant alleges two instances where this situation occurred. In the first instance, respondent's counsel was referring to the height of the grass, and stated, " 'I kept my grass,' Paul Walker says, 'I kept my grass cut.' But he didn't tell you he went by there and it was cut in August." The interlude does not comment on a dearth of testimony about the condition of Mr. Walker's property. In addition, appellant's objection was sustained and the jury was instructed to disregard. A mistrial was requested and denied. Granting

a mistrial is left to the sound discretion of the trial court, and that decision will not be overturned absent a manifest abuse of that discretion. *Pierce v. Platte–Clay Elec. Co-op., Inc.*, 769 S.W.2d 769, 778[13] (Mo. banc 1989).

In the second instance, respondent's counsel said, "Did they tell you there wasn't anything out there by evidence? ... They could have called any witnesses out there." Taken in context, these statements appear to refer to respondent's injury and medical condition, and testimony of certain doctors. We would caution counsel on retrial, however, to refrain from making this type of argument, as it could be interpreted in a variety of ways.

Appellant's sixth point alleges trial court error in admitting evidence of special damages, as they were not pleaded and not properly recoverable.

Respondent's petition was in two counts, Count I of which pertained to appellant. Paragraph 2 was the damage pleading, which read:

> 2. That the actions of the Defendant were in reckless disregard to the rights of the Plaintiff and complete indifference to the rights of Plaintiff and persons such as the Plaintiff and in addition to general damages the Plaintiff is entitled to punitive damages in the amount of $100,000.00.

The pleadings were never amended at any stage in these proceedings. At trial, respondent introduced, over appellant's objections, evidence of special damages, such as loss of farming income.

General damages are those that are natural, necessary, and logical consequences of a wrongful act, while special damages are natural but not necessary results of a defendant's wrongful acts. *Parsons Const. Co. v. Missouri Public Service Co.*, 425 S.W.2d 166, 173[10] (Mo.1968); *Porter v. Crawford & Co.*, 611 S.W.2d 265, 271[4] (Mo.App.1980). It is no longer debatable that evidence of special damages must be specifically pleaded. Rule 55.19;

*Rusk Farms, Inc. v. Ralston Purina Co.*, 689 S.W.2d 671, 681[20] (Mo.App.1985).

Respondent does not contend that the damages in question were general damages; rather, she argues that because appellant did not present a motion in limine, object during respondent's opening statement, or object at certain points during trial, the "cat was out of the bag" and the issue was not preserved.

Respondent introduced evidence of special damages during respondent's husband's testimony. Appellant's objections at trial, made before Mr. DeLaporte testified and four times during his testimony, were adequate. A motion in limine preserves nothing for review, *Essman v. Fire Ins. Exch.*, 753 S.W.2d 955, 958[4] (Mo.App.1988), and the opening statement is not evidence to be objected to. *Hays v. Missouri Pac. R.R. Co.*, 304 S.W.2d 800, 804[3, 4] (Mo.1957). Respondent's citations to appellant's failure to object were instances where respondent asked the witness for dollar figures, after having produced evidence the farming operation had changed after respondent's accident. Appellant objected, however, each time a dollar figure was requested. We find the issue sufficiently preserved.

It is elementary that the evidence at trial must conform to the pleadings. *Hays*, 304 S.W.2d at 805. That has not happened here. In the absence of specific pleadings of special damages, that evidence should not have been admitted.

In its seventh point, appellant asserts that the trial court erred in excluding the testimony of Dr. William E. Rice, one of respondent's treating physicians. During the trial, appellant attempted to call Dr. Rice to the stand to testify that he had examined and treated respondent in the past for phlebitis. This testimony would have allegedly established a prior problem in the area which respondent injured in her fall, and it would also have impeached respondent's claim that she had never had an injury or illness with her left leg prior to the accident. Appellant argues that this testimony was thus relevant, and that the trial court erred in excluding it.

■ Respondent objected when appellant attempted to call Dr. Rice as a witness. Though the basis of the objection to Dr. Rice's testimony is unclear, it appears from the record that respondent initially objected on the ground that the testimony was barred by the physician-patient privilege because the phlebitis occurred in 1976, nine years before respondent's mishap. In her brief on appeal, respondent concentrates on alleged violations in the discovery process, namely, that Dr. Rice's name was not included in the list of expert witnesses to be called by appellant and, that Dr. Rice revealed privileged information in an *ex parte* meeting. Issues not briefed on appeal are normally deemed abandoned. *Charlie v. Corum,* 774 S.W.2d 518, 520[3] (Mo.App.1989); *See also Christine H. v. Derby Liquor Store,* 703 S.W.2d 87, 88[1] (Mo.App.1985). We shall, nevertheless, address all of respondent's arguments as they may occur again on retrial.

Trial court rulings relative to acceptance or rejection of evidence will not be disturbed on appeal unless it is shown that the court abused its discretion in such rulings. *Iota,* 731 S.W.2d at 412. We will thus seek to uphold the trial court's ruling if it is supportable on any theory. *Arthur,* 665 S.W.2d at 365.

■ Dr. Rice was respondent's general physician prior to her accident. He was the first doctor that respondent contacted after her fall. Nonetheless, respondent claimed at trial that records of previous treatment by that doctor were not admissible because they violated the physician-patient privilege. Our Supreme Court's decision in *State ex rel. McNutt v. Keet,* 432 S.W.2d 597 (Mo.1968) is dispositive of the issue. In *McNutt,* the court held that, "once the matter of plaintiff's physical condition is in issue under the pleadings, plaintiff will be considered to have waived the [statutory physician-patient] privilege ... so far as information from doctors or medical and hospital records bearing on that issue is concerned." *Id.* at 601. Respondent clearly made injury to her leg an issue in this case. Therefore, any medical records or testimony relating to her injury are not subject to the physician-patient privilege, and are admissible.

■ Respondent's allegations of improper discovery and suggestions of the imposition of sanctions are similarly without merit. Respondent contends that appellant failed to disclose Dr. Rice's name in its answer to Interrogatory No. 10 requesting the identity of expert witnesses under Rule 56.01(b)(4). Though Dr. Rice's name was not specifically mentioned, appellant did explicitly retain the right to use any of respondent's treating physicians and medical records. Generally, the admission or exclusion of expert testimony by the trial court will not be disturbed on appeal unless it plainly appears that the trial court abused its discretion. *Rose v. Fague–Prouhet,* 701 S.W.2d 509, 511[1] (Mo.App. 1985). Respondent's contention is without merit. Dr. Rice is not considered an expert witness because he was not engaged by a party in anticipation of litigation in order to testify about scientific or technical matters. *See Stone v. Duffy Distrib., Inc.,* 785 S.W.2d 671, 675[2] (Mo.App.1990). "If some of [his] testimony incidentally called upon [his] learning and experience for conclusions and opinions, and could in that sense be called 'expert testimony,' that does not make [him an] 'expert witness' within the meaning of Rule 56.01(b)(4)." *Owen v. City of Springfield,* 741 S.W.2d 16, 20[5] (Mo. banc 1987). Therefore, Dr. Rice's name was not required to be disclosed as an expert witness for the purposes of Rule 56.01(b)(4).

Respondent also asserts that Dr. Rice disclosed confidential information in an *ex parte* meeting with appellant. The record in this regard contains insufficient information from which to draw a conclusion. Respondent cites *State ex rel. Woytus v. Ryan,* 776 S.W.2d 389 (Mo. banc 1989), in support. It is distinguishable, however, in that it deals with the court being asked to specifically authorize an *ex parte* meeting between defendant and one of the plaintiff's doctors.

■ We are mindful that for error to be reversible, there must be prejudice to the complaining party. *School Dist. of City of*

*Independence v. United States Gypsum Co.,* 750 S.W.2d 442, 448 (Mo.App.1988). While it is questionable whether appellant was prejudiced by this error, we need not decide that issue here. Suffice to say that on retrial, Dr. Rice's testimony is admissible because it is not subject to the physician-patient privilege, or the expert witness guidelines of Rule 56.01(b)(4).

Appellant's eighth point alleges that the trial court erred in admitting respondent's Exhibits 7 through 10. These exhibits consisted of letters from Dr. Garth Russell to respondent's attorney. At the videotaped deposition, respondent questioned Dr. Russell about the exhibits, at which point appellant objected to their admissibility. The entire deposition was played at trial, including the portions containing appellant's objection to the use of the exhibits. The playing of the deposition was suspended for a brief time, during which the exhibits were offered and admitted.

■■■ Respondent argues that since no objection was made to the exhibits at trial, any error in their admission was not preserved for review. Appellant suggests that the objection during the deposition should suffice to preserve the point. We disagree. "In Missouri no claim of error may be considered by an appellate court in a civil appeal unless it was presented to and decided by the trial court." *Ohlendorf v. Feinstein,* 636 S.W.2d 687, 690[3] (Mo. App.1982). This point was not preserved for review.

Appellant's ninth point asserts error in the denial of their motion for new trial because the cumulative effect of trial court errors prevented appellant from receiving a fair trial.

■■■ Appellant concedes that while the instances of error cited in the argument portion of its brief on this point, standing alone, may not warrant reversal, the errors taken together do. It is true a new trial can be ordered due to cumulative error, even without deciding whether any single point would constitute grounds for reversal. *Wiedower v. ACF Indus., Inc.,* 763 S.W.2d 333, 336–37[4] (Mo.App.1988). We

also note a trial court has broad discretion in controlling a trial at all stages, including opening statements, *Gibson v. Grant,* 766 S.W.2d 706, 709[2] (Mo.App.1989), closing arguments, *Titsworth v. Powell,* 776 S.W.2d 416, 420[2] (Mo.App.1989), and during trial itself for reception of evidence. *Iota,* 731 S.W.2d at 412. Most of appellant's grievances, however, are either not errors, minor infractions, sufficiently cured, or misstatements of the record.

Appellant cites three examples of alleged error in respondent's opening statement. First, they argued respondent's comments that defendants sent an investigator to follow her were improper. There, respondent was referring to evidence from the *City's,* not appellant's, insurance company's adjuster, who took her statement and investigated her injuries. It is difficult to find error in matters that do not relate to appellant. Second, appellant argues respondent's mentioning the crossclaim between appellant and the City was error. The trial court instructed that opening statement was not evidence, and respondent reiterated that in her first sentence on opening. We find no abuse of discretion in overruling appellant's objection to respondent's opening statement in this regard. *See Vaeth v. Gegg,* 486 S.W.2d 625, 629–30[15] (Mo.1972). Third, respondent allegedly attempted to introduce evidence during opening statement. Respondent merely requested the court take judicial notice of the mortality tables contained in the Missouri Revised Statutes. We find no error. *Newson v. City of Kansas City,* 606 S.W.2d 487, 490[2] (Mo.App.1980).

Appellant also cites several instances of alleged errors at trial, citing *Handshy v. Nolte Petroleum Co.,* 421 S.W.2d 198 (Mo. 1967), for the proposition that arguments designed to create hostility and resentment are erroneous. The first instance is that respondent accused appellant of misspelling the word "Hannibal." In the portion of the transcript cited, respondent is reading into the record the statement she gave to the City's insurance agent's adjustor. It was Mrs. DeLaporte herself who misspelled the word. We are at a loss to

find any prejudicial reflection upon appellant by this evidence.

Second, appellant claims respondent prejudiced it by comments that it was "wasting time" and making trial late. The trial court sustained objections to these comments, and further relief was not requested.

■ Third, appellant cites as error the following:

> Q (BY MR. WASINGER): Mrs. DeLaporte, if either Mr. Watkins or Mr. Plunkert could send you to a doctor to be cured, would you go?
>
> A I sure would.
>
> MR. PLUNKERT: I object.
>
> \* \* \* \* \* \*
>
> MR. PLUNKERT: Completely improper. I ask the jury be instructed to disregard the question.
>
> THE COURT: Sustained. The jury is instructed to disregard the question and the answer.

No further relief was requested. Appellant's motion for new trial did not contain this allegation, and it is therefore not preserved. Rule 78.07. The trial court cannot be accused of abusing its discretion in refusing to grant a new trial on a claim that has not been brought to its attention. *Ohlendorf*, 636 S.W.2d at 691.

Fourth, appellant cites error in respondent's making a "groundless" objection to a certain exhibit and testimony and then conceding the point to appear more favorable to the jury. Further, respondent supposedly accused appellant of altering an exhibit. A review of the record reveals respondent's counsel said "I object," when the exhibit was introduced. The parties then approached the bench, where respondent conceded. We do not find any prejudice resulting from proceedings held out of the jury's hearing. As for the alteration, respondent's counsel was handling what was apparently a stapled or paper-clipped exhibit and merely said, "You took them apart yesterday." Counsel thereafter approached the bench for further discussion. Again, most of the proceedings were out of the jury's hearing.

■ The final three examples are that respondent's counsel commented, at trial and in closing argument, upon appellant's counsel's rendering of legal services, that there is "no such thing" as an attorney-client privilege, and failure to call certain witnesses. The legal services claim stems from respondent's counsel's statements that appellant's counsel assisted in preparing certain documents and "made up answers for him." While arguments should not impugn opposing counsel's motives, *Williams v. North River Ins. Co.*, 579 S.W.2d 410, 413 (Mo.App.1979), we see no evidence of that here. The remaining two alleged errors have been sufficiently addressed in Points I and III, except to note misrepresenting the law during during closing argument is impermissible and the trial court has an absolute duty to curb such argument. *Titsworth*, 776 S.W.2d at 422.

■ Appellant points to three errors in closing argument as cumulative errors requiring reversal. First, appellants argue respondent improperly personalized the case by saying, "... you just put this in your own life." Appellant's objection was sustained, and further relief was not requested. This type of argument is improper, though not always reversible. *State ex rel. Benz v. Blackwell*, 716 S.W.2d 270, 275[8] (Mo.App.1986).

■ Appellant also asserts error in respondent's counsel's references to "St. Louis Lawyers." We caution counsel on retrial that remarks intended to arouse prejudice, not made within the scope of legitimate argument, are improper. *See Gilbert v. K.T.I., Inc.*, 765 S.W.2d 289, 300[27] (Mo.App.1988).

■ Lastly, appellant points to respondent's per diem arguments as error. Respondent's counsel stated:

> MR. WASINGER: Today, right now, she has a life expentancy of 39.25 years. Fourteen thousand three hundred and twenty-eight point seventy-five days.
>
> \* \* \* \* \* \*

MR. WASINGER: But what is it worth to suffer for fifteen thousand seven hundred and twenty-seven days as this lady—as this lady—

\* \* \* \* \* \*

MR. MARION WASINGER:—as this lady is suffering?

We think a modest verdict for fifteen thousand seven hundred and twenty-five days would be, with a life expentacy at the time it happened, would be between seventy-eight thousand six hundred and thirty-nine dollars and a hundred and fifty-seven two hundred and seventy dollars. That's from today. If you figure it from today, forgetting—I mean not forgetting, but compensating and taking that into account from today on or fourteen thousand three hundred and twenty-eight point seventy-five days, with a life expentacy of that time, a hundred and forty-three thousand two hundred and eighty dollars.

MR. PLUNKERT: At this point I object.

\* \* \* \* \* \*

MR. PLUNKERT: I ask for a mistrial on a per diem basis.

THE COURT: Overruled as to both objections and motion for mistrial is denied. Proceed.

This type of argument is error. *Faught v. Washam,* 329 S.W.2d 588, 602[27] (1959); *See also Haynes by Haynes v. Green,* 748 S.W.2d 936, 939 (Mo.App.1988). We caution counsel not to repeat this argument on retrial.

Appellant's tenth point asserts the trial court erred in denying appellant's motion to amend the judgment. Appellant argues it was entitled to have the judgment reduced because respondent had already received $10,000 from another joint tort feasor. Prior to trial, respondent accepted $10,000 to settle her claim with the owner of the White Mule property, where the fall took place. Appellant did not learn of this settlement until after the verdict and motion for new trial. Appellant filed for a motion to amend the judgment, claiming it would be unjust to allow the judgment to stand as written. The trial court denied the motion.

In 1983 the Missouri Supreme Court changed the method for reducing judgments by amounts recovered as advance payments or partial settlement. *See* M.A.I. 1.06. Under the new instructions, a jury is not to consider undisputed settlements. Rather, it is left to the court to properly adjust a jury award so as to avoid double recovery by a plaintiff. The Committee's Comments to the instruction state that:

Under the new procedure, the parties should make a record out of the hearing of the jury regarding undisputed prior settlement payments made ... as a partial settlement payment by a joint tortfeasor. The trial judge, as a matter of law, then will take any prior payments into consideration and will credit them on the damages assessed by the jury's verdict as required by law.

M.A.I. 1.06 Committee's Comment.

Respondent does not challenge this method of reducing the jury verdict. Rather, respondent asserts that she was under no duty to bring this settlement to the attention of the court or appellant. Respondent further contends that appellant failed to present the fact of the settlement in a timely and proper manner.

On remand, we direct the parties to preserve a record on this issue so that the trial court may act as necessary.

We reverse and remand for a new trial.

CRANDALL, C.J., and SATZ, J., concur.