**Gary Dean HACKER, Respondent,**

**v.**

**QUINN CONCRETE CO., INC., Cleo L. Chadwrick and Joseph A. Ellebracht, Appellants,**

**v.**

**Juanita TRUSSELL, Mark Nuelle and Dale Hilgedick, Respondents.**

**No. WD 45676.**

Missouri Court of Appeals, Western District.

May 25, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1993.

Application to Transfer Denied Aug. 17, 1993.

Eric T. Swanson, Theresa S. Hall, Kansas City, for appellants.

G. Michael Fatall, Kansas City, for respondents.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

This lawsuit arose from an automobile accident that occurred at approximately 1:00 p.m. on January 26, 1990, near the intersection of U.S. Highway 65 and Route WW. This is a "T" intersection commonly known as the Tina junction. Route WW goes east[1] from Highway 65, which runs north and south, to the town of Tina, approximately two miles from the junction. Tina junction sits in a low spot half way between the crests of two hills. The distance from the junction to each crest is 330 feet, as measured by the highway patrol officer who investigated the accident.

Prior to the accident, appellant Cleo Chadwrick, an employee of appellant Quinn Concrete Company, Inc. ("Quinn"), was driving a tractor-trailer truck northbound on Highway 65 when a rock struck and shattered the windshield. Unable to see through the windshield, Chadwrick pulled onto the shoulder in front of a Conoco station just south of Tina junction. From the station, Chadwrick telephoned his employer and asked him to send a different tractor. Appellant Joseph Ellebracht brought the replacement tractor and he and Chadwrick traded tractors. In order to make the switch, the men moved the truck onto Route WW and parked it across the road, parallel to Highway 65, completely blocking Route WW. Chadwrick was hauling concrete forms and, therefore, to make the switch, the trailer needed to be on firm footing. Because of recent weather, the shoulder was soft and Chadwrick and Ellebracht determined the "dolly," used to support the trailer while they made the switch, might sink into the shoulder preventing the new tractor from backing under the trailer or, worse, causing the trailer to topple and spill the load.

According to testimony of witnesses, the truck was parked anywhere from four feet to twelve or fifteen feet east of Highway 65 and was there about fifteen minutes. Chadwrick and Ellebracht estimated the switch would take about five minutes. They activated the flashers on their tractors but did not place any warning devices on the roadway, either on Highway 65 or on Route WW. Both men testified that

---

**1.** In appellants' statement of facts, they state, "A vehicle exiting off U.S. Highway 65 and onto Route WW can only go west toward Tina...." This court notes that Tina is, in fact, east of U.S. Highway 65.

when the trailer is unhooked from the tractor, the trailer's flashers do not operate.

Melba and Lester Lee were in the first vehicle that attempted to turn onto Route WW. The Lees were northbound on Highway 65 and, as they approached the junction, determined that there was insufficient room on Route WW for them to get by the truck. They pulled their vehicle onto the shoulder of Highway 65 approximately 60 to 80 feet south of Route WW to wait. The Lees had been waiting between five and ten minutes when Juanita Trussell, also northbound on Highway 65, approached the intersection and attempted to turn onto Route WW.

As she approached the intersection, Trussell noticed the Lee vehicle and the tractor-trailer. The Lee vehicle was partially obstructing her view and Trussell was unaware that Route WW was completely blocked. She attempted to turn onto Route WW but was unable to complete the turn. When she came to a stop, one half of her automobile was on Route WW and the other half was on the traveled portion of Highway 65.

While driving north on Highway 65, Trussell had noticed two cars behind her. The car closest to her, which was being driven by Gary Hacker, was about one-fourth mile behind her. Within seconds of coming to a stop at the intersection, Trussell heard the squealing of tires from the Hacker vehicle behind her.

William Gutshall was in the car behind Hacker. Both men were going to their homes from college in Warrensburg. Gutshall had been following Hacker for several miles. Gutshall lost sight of Hacker as Hacker passed over the crest of the hill just south of the junction. When Gutshall cleared the crest, he saw that Hacker had hit his brakes and Hacker's car had begun to slide sideways down the hill in the northbound lane of Highway 65. Then Hacker's car suddenly crossed the center line and collided with a tractor-trailer driven by Mr. Nuelle, which was traveling south on Highway 65. Nuelle was hauling 70,000 to 80,000 pounds of seed corn for his employer Dale Hilgedick. Nuelle's truck was in the southbound lane at the time of the collision.

Hacker was ejected from his car upon impact. The impact then pushed his empty car back into the northbound lane where it collided with Gutshall's car. Both cars skidded several feet together down Highway 65, coming into contact with the Lees' vehicle. Gutshall received a cut but the Lees were not injured. Following the accident, Hacker was flown by helicopter to Research Medical Center in Kansas City. He sustained severe injuries to his head and the lower portion of his body. Although the seriousness and extent of Hacker's injuries are not part of this appeal we note that he spent 110 days in the hospital and underwent some 18 surgeries, multiple skin grafts, and rehabilitation and that his injuries were extremely painful and permanent in nature.

Hacker filed a lawsuit against Chadwrick, Ellebracht and Quinn. They in turn filed a third party petition against Trussell, Gutshall, Nuelle and Hilgedick. Gutshall was dismissed from the lawsuit prior to trial.

The cause was tried to a jury in the Carroll County Circuit Court, commencing on October 28, 1991. The plaintiff presented evidence for three days and rested. None of the defendants or third-party defendants called any witnesses. At the close of the evidence, defendants Chadwrick, Ellebracht and Quinn moved for directed verdict, which motion was denied. The trial court also denied third-party defendant Trussell's motion for directed verdict. It sustained third-party defendants Nuelle's and Hilgedick's motions for directed verdict.

The trial court then recessed from October 30, 1991, until November 13, 1991, at which time the trial resumed. At that time, the court read the instructions and the parties made their closing arguments to the jury. The jury returned a verdict that same day in which it assessed Hacker's damages at $2 million and apportioned fault at 90% to the defendants and 10% to Hacker. On the defendants' third-party claim against Trussell, the jury found in

favor of Trussell. The defendants' motion for new trial was overruled and this appeal followed.

## I.

As their first point on appeal, Chadwrick, Ellebracht and Quinn, appellants herein, allege that the trial court erred in directing a verdict in favor of third-party defendants Nuelle and Hilgedick because, viewing the evidence in the light most favorable to appellants, a question of fact remained for the jury to decide. Appellants assert that sufficient evidence existed from which the jury could have found that Nuelle failed to maintain a careful lookout and that his actions, under the conditions present, were negligent.

A directed verdict is appropriate only if, considering the facts most favorably to the non-moving party, reasonable minds could only find in favor of the moving party. *Duvall v. Brenizer*, 818 S.W.2d 332, 335 (Mo.App.1991). In its consideration of a motion for directed verdict, the trial court may consider reasonable inferences to be drawn from the facts presented. *Id.* A case should not, however, be submitted to a jury unless "each and every fact essential to liability is predicated on legal and substantial evidence." *Id.* (quoting *Owens v. Union Elec. Co.*, 729 S.W.2d 248, 250 (Mo. App.1987)). A case may not be submitted to the jury unless substantial evidence exists tending to prove every element of the non-moving party's case and, in the final analysis, submissibility is a question of law. *Bandag of Springfield, Inc. v. Bandag, Inc.*, 662 S.W.2d 546, 550 (Mo.App.1983). In reviewing a directed verdict, this court must also consider the evidence, and all reasonable inferences therefrom, in the light most favorable to the non-moving party in order to determine whether the non-moving party made a submissible case against the movant. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 765 (Mo. banc 1984).

Appellants claim that Nuelle was negligent in failing to maintain a careful lookout.

The obligation of a driver to maintain a careful lookout imposes the "continuous and inescapable duty to maintain a vigilant lookout ahead and laterally ... in such observant manner as to enable him to see what one in the exercise of the highest degree of care for the safety of himself and others could and should have seen under similar circumstances." *Graham v. Conner*, 412 S.W.2d 193, 200–201 (Mo.App.1967); *Braun v. Hoffmeister*, 366 S.W.2d 406, 408 (Mo.1963); Section 304.010, RSMo (1986). The driver is also under a duty to take effective precautionary action "when a person, in the exercise of the highest degree of care, would have reason to anticipate danger." *Thomas v. Wade*, 361 S.W.2d 671, 674 (Mo. banc 1962); Section 304.010, RSMo (1986).

*Foster v. Farmers Ins. Co.*, 775 S.W.2d 143, 144 (Mo. banc 1989).

Appellants had the burden of showing a causal connection between Nuelle's alleged negligence, failure to keep a lookout, and Hacker's injury. *Pringle v. State Highway Comm'n*, 831 S.W.2d 735, 737 (Mo. App.1992). They fail to meet their burden if the evidence leaves "the element of causal connection in the nebulous twilight of speculation, conjecture and surmise." *Id.* (quoting *Shelton v. Bruner*, 449 S.W.2d 673, 680 (Mo.App.1969)). Failure to keep a lookout contains two inherent components: (1) the ability to see, and (2) the ability, including time and means, to avoid. *Id.*

There is no evidence that Nuelle had the time and means to avoid the accident. All those who witnessed the accident and testified at trial testified that Hacker's movement from the northbound lane into the southbound lane was sudden and instantaneous. There was no testimony from which causation could have been assigned to Nuelle. To have submitted this claim to the jury would have placed "the element of causal connection in the nebulous twilight of speculation, conjecture and surmise." *Id.* Appellants' Point I is denied.

## II.

As their second point on appeal, appellants allege trial court error in allowing

Officer Raw to testify that the intersection was a dangerous one and that appellants' conduct made it more dangerous. Appellants claim on appeal that Raw's testimony was not the proper subject of opinion testimony and was prejudicial in that the jury was capable of determining whether the intersection was dangerous and whether appellants' conduct made it more dangerous. They further claim that the jury gave the witness's testimony undue weight because he is a Missouri Highway Patrolman. Appellants also claim that they should have been permitted to examine Raw on his conclusion regarding the cause of the accident.

The questions presented to Officer Raw, his answers and the objection are as follows:

Q. Sir, based on your knowledge of that intersection and the highway, is it your opinion that blocking the entrance or exit off WW there where this trailer was parked created a dangerous condition?

MR. SWANSON: Objection, lack of foundation, not qualified. He said in your opinion, so it is obviously an expert question right off the bat, Judge.

THE COURT: Well, overruled. If he knows.

Q. (By Mr. Fatall) Based on your experience of going over that junction many, many times and the topography of the land.

A. That is a dangerous intersection without anything setting in the intersection.

Q. What if you block one of the arteries?

A. Very, very dangerous.

■ The only objection at trial to the witness's opinion was that no foundation had been laid concerning his qualifications. "We must consider the issue upon the basis of the objection that was made before the trial court; it may not be enlarged upon appeal." *Cheek v. Weiss,* 615 S.W.2d 453, 456 (Mo.App.1981). Determination of the qualifications of a witness and admissibility of opinion testimony is within the discretion of the trial court. This court will not interfere unless the trial court has abused that

discretion. We find no such abuse of discretion.

[A]ppellants have run afoul of both the proscription against interposing one objection at trial and another on appeal, and the rule that "[a]n objection to the admissibility of evidence must be specific and contain the proper ground of its exclusion, else on appeal the trial court will not be convicted of error for overruling it."

*Culver–Stockton College v. Missouri Power & Light Co.,* 690 S.W.2d 168, 172 (Mo. App.1985) (citations omitted). Appellants failed to preserve this point for appeal. Even had they preserved the issue, we fail to discern any prejudice to appellants caused by this testimony. Accordingly, it is denied.

■ Appellants claim they were further prejudiced by the trial court's refusal to allow Officer Raw to testify that he had listed as a contributing cause of the accident, Hacker's inattention. We believe this evidence tantamount to asking an investigating officer whether he issued a traffic citation to a driver. Missouri courts have consistently held this testimony to be "no aid to the jury in understanding the evidence or determining the facts in issue." *Stucker v. Chitwood,* 841 S.W.2d 816, 820 (Mo.App.1992). The officer's decision of whether a citation should be issued would depend on his opinion of the driver's conduct. The Missouri Supreme Court has held that the officer's opinion concerning a driver's conduct is a false issue and making that determination is for the jury. *Wills v. Townes Cadillac–Oldsmobile, Inc.,* 490 S.W.2d 257, 263 (Mo.1973). The court's ruling on the evidence was proper. Appellants' second point is denied.

### III.

As their third point on appeal, appellants allege trial court error in giving Instruction No. 8. They claim it was prejudicially erroneous in three respects: (1) the first submission of paragraph first failed to hypothesize the actual conduct of appellants that must be found by the jury to be negligent but erroneously directed the jury that the

failure of appellants to park at a specific location was negligent; (2) the second submission of paragraph first misstates the law and is not supported by the evidence; and (3) paragraph first improperly deviated from M.A.I.

Instruction No. 8 reads as follows:

In your verdict you must assess a percentage of fault to defendants Quinn Concrete Company, Cleo Chadwrick and Joseph Ellebracht, whether or not plaintiff is partly at fault, if you believe:
First, either:
Defendant Chadwrick failed to park his truck with the right side as near the right hand side of Route WW as practicable, or
Defendants Chadwrick and Ellebracht failed to warn oncoming traffic on Highway 65 that entrance onto Route WW was blocked, and
Second, defendants Chadwrick and Ellebracht were thereby negligent, and
Third, such negligence directly caused or directly contributed to cause damage to plaintiff.
In assessing such percentage of fault against Quinn Concrete, Ellebracht and Chadwrick, you must consider them all as one party and assess only the fault of Ellebracht and Chadwrick as the fault of all.

At trial, appellants objected to this instruction on the grounds that paragraph first "is a roving commission for the jury as to location to be parked" and that no evidence established a duty to warn as a matter of law. In their motion for new trial as to this point, appellants allege as follows:

The court erred in submitting Instruction No. 8 to the jury since it constituted a roving commission as to where defendants should have parked their tractor-trailer unit and, further, in instructing the jury that it was negligent for defendants in failing to warn when there was no duty-to-warn established by the evidence presented.

■ Appellants have evidently abandoned their "roving commission" argument as to paragraph first of the instruction by not raising it on appeal. Further, appellants failed to allege, either at trial or in their motion for new trial, that paragraph first improperly deviated from M.A.I. Therefore, this allegation of error was not preserved for review. Rules 78.07 and 78.-09; *Dennis v. St. Louis Bd. of Educ.*, 809 S.W.2d 20, 21 (Mo.App.1991). **Section 512.160.1, RSMo 1986, states:**

**Apart from questions of jurisdiction of the trial court over the subject matter and questions as to the sufficiency of pleadings to state a claim upon which relief can be granted or a legal defense to a claim, no allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court.**

The only argument advanced on appeal on this point which was properly preserved for our review is that the second submission of paragraph first misstates the law and is not supported by the evidence. As stated above, the second submission of paragraph first states, "Defendants Chadwrick and Ellebracht failed to warn oncoming traffic on Highway 65 that entrance onto Route WW was blocked."

■ Appellants argue that the evidence did not establish a duty to warn. In a situation nearly identical to the case at bar, appellants contended that the verdict directing instruction was erroneous because it hypothesized that the defendant had an affirmative duty to warn oncoming traffic that her vehicle was obstructing part of the roadway. *Pruneau v. Smiljanich*, 585 S.W.2d 252, 254 (Mo.App.1979). The significant portion of the instruction being interpreted stated that the verdict must be for the plaintiff if the jury believed that defendant's car was stopped partially blocking the road and the defendant failed to warn oncoming traffic that her car was obstructing the road. *Id.* The court in *Pruneau* held:

As a general rule, a person who obstructs a roadway with his or her vehicle has a duty to remove it and warn other drivers of the possible hazard. Cases in which this rule has been addressed, how-

ever, have also recognized the caveat that there are situations in which both these duties cannot be performed simultaneously.

*Id.* In the case at bar, appellants' situation was not such that it prevented one or both of them from warning approaching traffic that their truck was blocking Route WW. Further, the Missouri Supreme Court has stated:

> The duty of a motorist not to obstruct the traveled portion of the highway necessarily means that, if his automobile does so ... he has the duty to remove the automobile as promptly as reasonably possible. As stated in *Smith v. Producers Cold Storage Co.*, Mo.App., 128 S.W.2d 299, 308, "it is negligence to allow a motor vehicle to stand on the traveled portion of the highway".

> It is also true that as a general rule a person has the duty to warn approaching motorists of a hazard he has created on the traveled portion of a highway.

*Eastman v. Brackman*, 347 S.W.2d 126, 129 (Mo. banc 1961). It is apparent appellants did have a duty to warn oncoming traffic that they had blocked Route WW. Instruction No. 8 does not misstate the law.

■ Appellants also contend that the second submission of paragraph first is not supported by the evidence because it was uncontroverted that defendants had "engaged the flashers on the tractor-trailer during the stop." Our review of the testimony, however, does not support appellants statement. Mrs. Trussell testified that, as she was approaching the intersection, she did not see any flashers on the truck. Mr. Lee, who was approximately 70 or 80 feet from the trailer, testified that during the five to ten minutes he and his wife were waiting, he did not see any lights flashing on the truck. Additionally, both Chadwrick and Ellebracht testified that while the tractors were being switched, there would be no power to activate the flashers on the trailer.

This evidence adequately supports a finding that the defendants failed to warn oncoming traffic that Route WW was blocked. Appellants' third point is denied.

## IV.

As their fourth point on appeal, appellants allege trial court error in allowing plaintiff's counsel to argue, during closing argument, the sum of $450,000 for future medical expenses. Appellants claim that such argument was improper because there was no evidence to support this element of plaintiff's damages and that it resulted in an excessive damage award. The challenged portion of the argument is as follows:

> MR. FATALL: You all remember what things cost 25 years ago compared for [sic] today?

> MR. SWANSON: Objection, same basis with time value money that you sustained the objection to my argument.

> (Proceedings held at the bench.)

> THE COURT: I am going to sustain that objection on time.

> MR. FATALL: I cannot argue about— the testimony was he would need rehabilitation. You tell me I can't argue?

> THE COURT: You can argue that.

> MR. SWANSON: He mentioned a figure. There is no evidence of the cost of future medical and asking him to speculate. I don't think he can talk about future medical expenses.

> THE COURT: You can't talk about future medicals.

> (Proceedings returned to open court.)

> MR. FATALL: You all heard the evidence. You know what he is going to go through. You know what he is faced with. For the future surgeries and the rehabilitation, over 50 years, $450,000.

Appellants made no objection to Mr. Fatall's figure of $450,000 nor did they request the trial court to admonish the jury to disregard the argument. Additionally, appellants did not request the court to admonish appellants' counsel.

In their brief on appeal, appellants first state, Despite the trial court's admonition against "talk[ing] about future medicals," plaintiff's counsel disregarded the trial court's ruling and argued this element of damage to the jury under the

guise of "future surgeries and future rehabilitation" as if there was evidentiary support for this sum.

Respondent Hacker argues, inter alia, that appellants did not timely object to the complained-of argument nor did they move for a mistrial or request the court to instruct the jury to disregard the argument. In their reply brief, appellants respond that the trial court specifically instructed respondent's counsel that he could argue "future rehabilitation" and, in light of that ruling, appellant was not required to request the trial court to take affirmative action when the court's ruling on the subject indicates that such request would have been to no avail.

Appellants are not, however, challenging any argument concerning future rehabilitation. They are challenging counsel's use of the $450,000 figure. We agree with respondent Hacker that a timely objection was not made.

■ "Generally, failure to object to an argument or statement at the time it is made to a jury results in a waiver of any right to complain about the argument or statement on appeal." *Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 228 (Mo.App.1990). In our review of the record as a whole, we find that the trial court did not abuse its discretion in not granting a new trial. Even if the statement was improper, which we do not here decide, it certainly was not so plainly inflammatory as to have affected the result of the case. "When an argument is not manifestly improper the discretion rests with the trial court and 'there must be timely objection, successive requests for specific action and specific assignment in the motion for a new trial.'" *Hewitt v. Kansas City*, 761 S.W.2d 679, 683 (Mo.App.1988) (quoting *Stewart v. Boring*, 312 S.W.2d 131, 135 (Mo.1958)). The trial court is in the best position to judge the effect of the propriety of closing argument and, therefore, that court is given considerable discretion in ruling on matters concerning closing argument. *Wadlow v. Lindner Homes, Inc.*, 722 S.W.2d 621, 632 (Mo.App.1986). We find no such abuse of discretion.

■ Additionally, when the trial court sustains an objection to improper argument and the objecting party fails to request further remedial action, no error is preserved to appellate review. *Olsten v. Susman*, 391 S.W.2d 328, 330 (Mo.1965). The objecting party may not, on appeal, complain that the trial court should have done more than requested. *Id.*

■ This court has stated that it is primarily the jury's function to fix the amount of damages. When the trial court overrules a motion for new trial, it approves the amount of the verdict. *Gardner v. Reynolds*, 775 S.W.2d 173, 175 (Mo. App.1989). We will not disturb the jury's determination of damages unless the amount is so grossly excessive that it shocks the conscience of this court. *Id.* The plaintiff below argued damages to the jury in the amount of $3,445,000.00. The jury awarded $2 million. There was medical testimony that Hacker's injuries were severe and permanent. There was also evidence that he will require significant future medical care, that his injuries will probably be disabling and that he will, in the future, be wheelchair bound. The jury's determination of damages is not so grossly excessive as to shock the conscience of this court.

■ Appellants further argue in this point that plaintiff's counsel displayed a chart to the jury during his closing argument that contained the $450,000 figure. Appellants allege that this "resulted in prejudice to defendants inasmuch as $450,-000 represents approximately 25% of the jury's finding of damages and, further, represents approximately one-seventh of the total damages sought by plaintiff's counsel during closing argument." We believe it takes a major leap of faith to determine that plaintiff's brief use of the chart resulted in prejudice to defendants. On appeal, appellant has the burden of establishing prejudicial error. *McMullin v. Borgers*, 806 S.W.2d 724, 731 (Mo.App.1991). Appellants herein have filed to meet that burden.

Appellants cite us to a 1992 decision of the Missouri Court of Appeals, Eastern

District. That case was, however, transferred to our Supreme Court for final determination. *Lester v. Sayles*, 850 S.W.2d 858 (Mo. banc 1993). Additionally, the facts of *Lester* are inapposite to those of the case at bar. In *Lester*, the Court reviewed the propriety of allowing the jury to inspect, in the jury room, exhibits that were neither formally nor constructively introduced. *Lester v. Sayles*, 850 S.W.2d at 861.

The exhibit in question was a 40 by 60 inch chart that displayed the "high" and "low" ranges for each of the various items of damage suffered by the plaintiff. *Id.* During his closing argument, plaintiffs' counsel placed the chart on an easel in full view of the jury and referred to it several times without objection. *Id.* During its deliberations, the jury requested the chart used by plaintiffs' counsel in closing argument. Over the defendants' objection, the trial court marked the chart as an exhibit and sent it to the jury room. *Id.* Less than an hour later, the jury returned its verdict for the plaintiff and determined the amount of damages to be the exact figure listed on the chart as the "high" total damage award. *Id. Lester* did not address the propriety of only displaying the chart to the jury during closing argument. Appellants' fourth point is denied.

### V.

As their fifth point on appeal, appellants claim that the trial court erred in allowing plaintiff's counsel to argue that damages should be awarded pursuant to a mathematical formula. Appellants claim that they were further prejudiced because the court barred their counsel from rebutting this argument by commenting on the current value of a dollar.

 Mr. Fatall, counsel for respondent, made the following argument at trial:

The bigger issue in this case is the damages. What are these horribly disfiguring and disabling damages worth? You know, it is kind of a crazy society these days when you read and see somebody like Madonna makes 50 million dollars in one year for singing a few times, and you see where a fighter named Buster Douglas got 30 million dollars for fighting Evander Holifield for about a two-hour job. You see that Arnold Schwarzenegger gets 10 million dollars to make one movie that takes less than a year, and you see that the average baseball, basketball, football player makes five million dollars to play six months a year. Gary Hacker has 50 years, 18,000 days, 438,000 hours.

MR. SWANSON: Objection to quotient argument.

(Proceedings held at the bench.)

THE COURT: It is getting very close to that. I think you ought to get off that.

MR. SWANSON: This is a quotient argument.

MR. FATALL: I am not assessing any monetary value to it.

MR. SWANSON: I object for the record.

(Proceedings returned to open court.)

MR. FATALL: 50 years, all those hours and minutes. What are you going to assess to it? Well, let's look and see some of the things—I'm gonna talk about those when we come back. Some of the things you need to consider when you are assessing his damages is [sic] present medical expense, pain, and disability to date, permanent disability for 50 years out of all the different items of damages that he suffered: loss of his tail bone, 50 percent of the muscle gone in his leg, wear and tear on his joints, blind spots in his vision, cosmetic injuries, all the other ways that has [sic] affected his earning capacity, what he is going to go through in the future in his medical bills. All of those figures, when I come back, are going to total up for his damages to $3,445,000. When I come back, I will tell you how all of those things reasonably would form that damage. Thank you.

During his rebuttal argument, Mr. Fatall stated, in pertinent part:

What are these damages worth? The present medical expense, that is the easi-

est to comput [sic] and the smallest part, $445,000....

That went on for 110 days.... He was feeling something all that time, all the pain. I am going to say that is $250,000 for all that pain, and that is a minimal mount, probably too low.

Next we have 50 years now. He is going to live 50 years.... He has nothing that is going to cut his life expectancy. He has 50 years to live with this stuff.

Mr. Fatall then recounted the numerous injuries suffered by Hacker and stated, "This is just starting. This is just starting. I think $950,000 for all of those permanent injuries is appropriate." He next discussed Hacker's employment prospects, or lack thereof, and stated, "I think it is appropriate, rest of his life, 50 years, that he be paid at least for that diminished earning capacity as much as you get for minimum age [sic], $335,000, for that diminished earning capacity is appropriate."

The leading case in Missouri concerning per diem or mathematical formula arguments is *Faught v. Washam*, 329 S.W.2d 588 (Mo.1959). The court in *Faught* "condemned any mathematical formula for the computation of sums to be allowed for pain and suffering...." *Ricketts v. Kansas City Stock Yards of Maine*, 537 S.W.2d 613, 623 (Mo.App.1976). *Faught* recognized, however, that "mere argumentative suggestion of a lump sum does not constitute reversible error." *Id.* (citing *Faught*, 329 S.W.2d at 602-3). Although *Faught* has been followed numerous times in Missouri, we find no case that was reversed because of such argument.

Further, *Faught* is distinguishable from the case at bar. In *Faught*, the combination of four different trial errors led to reversal; asking the jurors to put themselves in the plaintiff's shoes, making a job offer argument [2], using a mathematical formula argument, and the cumulative nature

of the other three. *Furlow v. Laclede Cab Co.*, 502 S.W.2d 373, 376 (Mo.App.1973).

Two Missouri cases have held that arguments nearly identical to that offered by respondent's counsel did not fall within the proscription of *Faught* because counsel did not suggest any per day or per hour amount, but rather, suggested a lump sum amount and, because the jury failed to accept the amount requested, the argument did not affect the size of the verdict or cause it to be excessive. *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 303 (Mo. banc 1978); *Ricketts*, 537 S.W.2d at 623-24.

Appellants encourage this court to follow *Delaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526 (Mo.App.1991). In *Delaporte*, this court's Eastern District reversed and remanded the cause for a new trial on an issue other than the mathematical formula argument. The court then addressed the remaining points raised that might occur on retrial, one of which was what the court termed a "per diem" argument. *Id.* at 538. The argument consisted of stating the plaintiff's life expectancy in years and days and then suggesting a lump sum amount as damages. *Id.* The court stated, "This type of argument is error" citing *Faught* and *Haynes v. Green*, 748 S.W.2d 936, 939 (Mo.App.1988).

The assertion by the court that the argument is error, clearly constitutes obiter dictum. *Cook v. Pedigo*, 714 S.W.2d 949, 951 (Mo.App.1986). "Any reported opinion should be read in the light of the facts of that particular case, and it would be unfair as well as improper 'to give permanent and controlling effect to casual statements outside the scope of the real inquiry.'" *Id.* (quoting *State v. Miles Laboratories, Inc.*, 365 Mo. 350, 364-65, 282 S.W.2d 564, 573 (Mo. banc 1955); *Rauch v. Metz*, 212 S.W. 353, 357 (Mo. banc 1919)). We have distinguished *Faught* above. The *Haynes* case concerned a "Golden Rule"

---

2. "'I want to offer you a job and I want to tell you a little bit about this job ...; if you take it you have to keep it for the rest of your life, you work seven days a week, no vacations, work

daytime and night. The other thing is, you only get paid $3.00 a day. Here is your job—your job is to suffer Mr. Faught's disability.'" *Faught*, 329 S.W.2d at 602.

argument,[3] and had nothing to do with a per diem or mathematical formula argument. We find neither of these cases instructive on the issue currently before this court. We choose, rather, to follow the opinion of our Supreme Court in *Graeff*, 576 S.W.2d at 303. Appellants allege that the trial court's "error" was further compounded by its refusal to allow appellants' argument concerning the current value of a dollar. As stated above, the initial allegation of appellants' fifth point does not constitute error. The trial court's refusal to allow the value of money argument does not approach the abuse of discretion standard we must observe before we can reverse the action on appellants' claim. Accordingly, appellants' fifth point is denied.

## VI.

As their sixth point on appeal, appellants complain about the trial court's admission of an exhibit that had not been disclosed to appellants prior to trial pursuant to a discovery request. Appellants served Hacker with a request for production of any documents on which Hacker's expert witness intended to rely during trial. It is undisputed that Hacker did not provide the challenged exhibit to appellants. Appellants allege that the trial court further erred in allowing an expert witness to testify from notes reflecting measurements and investigation of the scene of the accident made the same day as the witness's testimony in court.

A trial court is vested with broad discretion as to its choice of a course of action during trial when the introduction of evidence is challenged on the ground that it has not been disclosed in response to appropriate discovery. In the sound exercise of that discretion it may admit or reject such evidence or determine and impose other appropriate sanction. *Gassen v. Woy*, 785 S.W.2d 601, 604 (Mo. App.1990). "Exercise of [the trial court's] discretion should be directed toward the accomplishment of fundamental fairness and the avoidance of unfair disadvantage." *Ellis v. Union Elec. Co.*, 729 S.W.2d 71, 76

(Mo.App.1987). In exercising its discretion, the trial court must first determine whether the complaining party has been prejudiced. *State ex rel. Missouri Highway & Transp. Comm'n v. Pully*, 737 S.W.2d 241, 245 (Mo.App.1987). As we stated above, on appeal, appellants have the burden of establishing prejudicial error.

The offending exhibit is captioned "Elements of Driver Perception–Reaction Time." It consists of a chart of the steps that must be taken to avoid a crash. It contains no information or facts specific to the instant action. It was prepared by the witness and used merely as an explanatory tool to aid him in his testimony. The trial court reviewed the exhibit and determined that its use constituted no prejudice to appellants. We find nothing to indicate that the trial court abused its discretion in allowing the witness to use this exhibit.

As to appellants' argument concerning testimony from measurements taken the day of the witness's testimony, we also are unable to find that appellants were prejudiced. Appellants complain that they were not allowed a short recess to compare the witness's newly obtained figures with those from other sources. Appellants have now had sufficient time to compare the figures with those from other sources but they fail to state whether any differences were found or whether the witness changed his testimony as a result of those newly obtained figures. Appellants have failed to meet their burden of showing prejudicial error. Accordingly, their sixth point is denied.

## VII.

As their seventh point on appeal, appellants allege the trial court erred in overruling their request for a mistrial and in permitting testimony that Chadwrick received a ticket and entered a plea to the charge of illegal parking. They argue that the evidence concerning the traffic citation is inadmissible in a negligence case because it is prejudicial and brings a false issue before the jury. They further argue that the

3. Attempting to get the jurors to associate their own children with the child in the case.

evidence was inadmissible as an admission of guilt because Chadwrick submitted an Alford plea to the charge.

On cross-examination, Hacker's counsel asked Chadwrick whether he had been found guilty of being illegally parked as a result of this accident. Respondents' counsel objected to the question and, following discussion held at the bench, the court made the following ruling: "Rephrase your question, but that is improper, the way you phrased it now. I think he is entitled to get it as far as showing credibility of the witness." Hacker's counsel then asked, "Have you ever been convicted of a misdemeanor?" When Chadwrick responded that he had, counsel then asked whether the misdemeanor was for being illegally parked on January 26, 1990. After the court overruled respondents' objection, the following exchange took place:

Q. (By Mr. Fatall) Is that the one, sir? You were convicted of that?

A. Was I convicted of it?

Q. Found guilty and paid a fine.

A. We pled no contest, sir.

Q. Were you found guilty and paid a fine?

A. We pled no contest, sir. I guess we were.

Q. Did you pay a $25 fine, and the Judge found you guilty?

A. The lawyer for Quinn Concrete took care of it, sir. I don't know how much the fine was.

Q. But you know there was a fine, and you know you were found guilty?

A. I don't know that there was a fine. The lawyer took care of it, sir.

In reviewing this issue, this court has located cases holding that a guilty plea is admissible as a declaration against interest and is to be considered by the jury as other declarations against interest. *Nichols v. Blake,* 418 S.W.2d 188, 190 (Mo.1967); *Wallace v. Director of Revenue,* 786 S.W.2d 893, 894–95 (Mo.App.1990). The questions to Chadwrick do not, however, concern a guilty plea, but rather whether he was found guilty.

Respondent Hacker argues that this line of questioning is admissible pursuant to § 491.050, RSMo 1986, which states:

Any person who has been convicted of a crime is, not-withstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. Such proof may be either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.

Our Supreme Court "has uniformly and consistently held that the statute confers an absolute *right* to show prior convictions and the nature thereof for the purpose of impeaching a witness, both in criminal and civil cases." *Forbis v. Associated Wholesale Grocers, Inc.,* 513 S.W.2d 760, 764 (Mo.App.1974).

Appellants equate the questions to cases where evidence of the issuance of a traffic citation was elicited at the trial of a negligence action based on the same event. Missouri courts have held that "it is improper to introduce evidence showing that the investigating officer did or did not issue a traffic citation to a driver." *Stucker v. Chitwood,* 841 S.W.2d 816, 820 (Mo.App. 1992). Introduction of such evidence injects a false issue into the case in that the officer's decision on whether to issue a citation reflects his opinion concerning the driver's conduct. *Id.* It is the jury's role to determine whether the driver's conduct is negligent. *Id.*

We note that the questions in the instant action do not fall within either category, but are a hybrid of the two. Therefore, neither argument advanced by the parties is directly on point.

Appellate courts are not allowed to reverse trial court judgments for errors that

do not materially affect the outcome of a case. *Lewis v. Wahl,* 842 S.W.2d 82, 85 (Mo. banc 1992). Without finding that admission of the evidence is trial error, we do find that, even if it is, it does not materially affect the outcome of the case. Aside from the evidence of a finding of guilt for a parking violation, sufficient evidence exists from which the jury could reasonably find the defendants were negligent in parking their truck. Appellants seventh point is denied.

### VIII.

█ As their eighth point on appeal, appellants challenge the jury's verdict in favor of third-party defendant Juanita Trussell. On appeal, they claim the verdict was not supported by the evidence because it was undisputed that she stopped her car on the travelled portion of Highway 65. In their motion for new trial, however, appellants did not raise this specific issue nor was a specific objection made on this ground at trial. Therefore, this allegation of error was not preserved for review. Rules 78.07 and 78.09; § 512.160.1, RSMo 1986; *Dennis v. St. Louis Bd. of Educ.,* 809 S.W.2d 20, 21 (Mo.App.1991). (See Point III above.)

█ In appellants' motion for new trial, they alleged that the verdict was against the weight of the evidence. "Unless there is an abuse of discretion, an appellate court may not rule on the weight of the evidence in a jury-tried case because this determination is within the exclusive province of the trial court." *Id.; Housing Auth. of Rolla v. Kimmel,* 771 S.W.2d 932, 940 (Mo.App. 1989). Accordingly, appellants' eighth point is denied.

### IX.

As their ninth and final point on appeal, appellants claim the trial court erred in entering judgment on the jury's verdict because the cumulative prejudicial effect of the errors raised, coupled with the two-week recess between the close of the evidence and submission of the case to the jury, warrant a new trial.

█ In reviewing the trial court's grant or denial of a new trial, this court must indulge every reasonable inference favoring the trial court's ruling and not reverse such ruling absent a clear abuse of discretion. *Wiedower v. ACF Indus., Inc.,* 763 S.W.2d 333, 336 (Mo.App.1988). "The general rule is that non-prejudicial error will not justify reversal of a judgment by an appellate court." *Roque v. Kaw Transp. Co.,* 697 S.W.2d 254, 257 (Mo.App. 1985). Additionally, pursuant to § 512.-160.2, RSMo 1986, this court shall not reverse any judgment unless error was committed by the trial court against the appellant and the error materially affects the merits of the action. Appellants' allegations of error, either singly or taken together, do not materially affect the merits of the action nor do they constitute prejudicial error. Appellants' ninth point is denied.

Judgment of the trial court is affirmed.

All concur.