NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220820-U

NO. 4-22-0820

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 6, 2023
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| JOYCE HILAND, Administrator of the Estate of Dean Meyersick, Deceased, <br>       Plaintiff-Appellant, <br>       v. <br> CHRISTOPHER G. SCHOLZ, Special Representative of the Estate of Dale S. Monroe, Deceased, <br>       Defendant-Appellee. | ) Appeal from the <br> ) Circuit Court of <br> ) Adams County <br> ) No. 17L40 <br> ) <br> ) Honorable <br> ) Scott Douglas Larson, <br> ) Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice DeArmond and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1  In Missouri, Dean Meyersick was involved in a three-vehicle traffic accident. His car hit Dale S. Monroe's pickup truck, which was disabled on the highway, and then ran into Jackson D. Dolbeare's oncoming car. In a hospital in Quincy, Illinois, Meyersick died of his injuries. Plaintiff, Joyce Hiland, is the administrator of Meyersick's estate. Hiland sued Monroe in the Adams County circuit court, pleading counts under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2014)) and the Survival Act (755 ILCS 5/27-6 (West 2014)). During the pendency of the proceedings below, Monroe died of causes unrelated to the traffic accident. Defendant, Christopher G. Scholz, was substituted for Monroe as the special representative of Monroe's estate. The jury returned a verdict in defendant's favor.

¶ 2  Plaintiff appeals. She argues that, in addition to committing several other errors, the circuit court erred on a conflict-of-law question. By granting some of defendant's motions

*in limine*, the court declined to recognize Monroe's duty, under Missouri law, to warn approaching drivers that his truck was stalled in the travel lane of the highway. This *in limine* ruling was prejudicial, plaintiff argues, because, in accordance with that ruling, the court gave jury instructions that left it up to the jury whether Monroe's alleged failure to warn was negligent. Plaintiff maintains that, under Missouri law, by contrast, such a failure to warn was in itself a breach of duty and, hence, was negligence *per se*. Because we find merit in this conflict-of-law argument, we do not reach plaintiff's other claims of error. We reverse the judgment and remand this case for a new trial.

¶ 3                                                I. BACKGROUND

¶ 4                                      A. The Three-Vehicle Accident

¶ 5             On November 10, 2015, Monroe was driving a pickup truck north on Missouri State Highway B (Highway B), a two-lane country road that runs northeast and southwest. About a mile south of LaGrange, Missouri, Monroe hit a deer. His truck went over the center line and came to rest in the southbound lane, with the left tires on the shoulder and the right side of the truck protruding into the southbound lane. Thus, the truck ended up pointing north in the southbound lane of Highway B. Because the bumper was bent onto the front driver's-side tire, which remained fully inflated, the steering wheel would not turn, making it impossible to maneuver the truck the rest of the way onto the shoulder—and the truck was on a curve of the highway. To get by Monroe's truck, a southbound vehicle, coming around the curve, would have to go into the northbound lane.

¶ 6             After Monroe's truck became immobilized in the southbound lane by the collision with the deer, Dolbeare approached in the northbound lane. Simultaneously, Meyersick

- 2 -

approached in the southbound lane. Meyersick's car hit Monroe's truck, careened into the northbound lane, and hit Dolbeare's oncoming car.

¶ 7                                   B. Defendant's Tenth and Eleventh Motions *in Limine*

¶ 8         In his tenth and eleventh motions *in limine*, defendant requested the circuit court bar plaintiff from mentioning, in the jury's presence, that Monroe "had any duty to warn the [p]laintiff [*sic*]" such as by waving his hands or his cell phone. The court granted these motions. The reason for this ruling, the court explained, was that "the plaintiff ha[d] not presented sufficient statutory citation or case law authority for the court to find that[,] in addition to the exercise of ordinary care, the defendant had an affirmative duty to warn plaintiff and any oncoming motorists."

¶ 9         Plaintiff moved for reconsideration, arguing that this *in limine* ruling was inconsistent with *Hacker v. Quick Concrete Co.*, 857 S.W.2d 402, 408 (Mo. Ct. App. 1993), in which the Missouri Court of Appeals stated, "As a general rule, a person who obstructs a roadway with his or her vehicle has a duty to remove it and warn other drivers of the possible hazard." (Internal quotation marks omitted.) Nevertheless, the circuit court adhered to its *in limine* ruling. The court found no conflict between Illinois statutory law (625 ILCS 5/11-402(a) (West 2014)) and Missouri statutory law (Mo. Rev. Stat. § 304.151 (2016)), both of which required " 'every reasonable effort to move the vehicle or have it moved so as not to block' " traffic. The court declined to "use Missouri case law to impose a corollary duty to warn approaching motorists of a hazard the driver created on the traveled portion of a highway." The court held that, instead, "the Illinois Vehicle Code and the Illinois Civil Pattern Jury Instructions set forth the applicable duties of drivers or operators of motor vehicles upon public highways."

¶ 10                                   C. The Jury Instructions

¶ 11	Plaintiff tendered jury instructions that, as plaintiff's attorney told us in oral arguments, reflected the applicable Missouri law.

¶ 12	Plaintiff's jury instruction J defined Monroe's duty. This proposed instruction read, "It is the duty of every driver of a vehicle using a public highway to exercise ordinary care at all times to avoid placing others in danger and to exercise ordinary care at all times to avoid a collision."

¶ 13	Plaintiff's jury instruction L and plaintiff's instruction No. 12 were issues instructions for counts I and II of the complaint, the wrongful-death action and the survival action. They stated:

> "The issues to be decided by you *** are as follows:
>
> The plaintiff *** claims that she was injured and sustained damage and that the conduct of Dale Monroe was negligent in one or more of the following respects:
>
> * * *
>
> v. Failed to warn motorists of the obstruction of Highway B and the dangerous condition caused by his vehicle ***."

¶ 14	Plaintiff's jury instruction Nos. 14 and 15 explained that plaintiff "ha[d] the burden of proving" several propositions in counts I and II, including the following proposition: "that Dale Monroe acted or failed to act in one of the ways claimed by the plaintiff, as stated to you in these instructions and that in so acting, or failing to act, Dale Monroe was negligent."

¶ 15	Plaintiff's jury instruction G in turn defined "negligence" as follows:

> "When I use the word 'negligence' in these instructions, I mean the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not, under the circumstances

- 4 -

similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide."

¶ 16 The circuit court gave plaintiff's jury instructions G and J but refused plaintiff's jury instruction L and plaintiff's jury instruction Nos. 12, 14, and 15.

¶ 17 In lieu of plaintiff's jury instruction L and plaintiff's jury instruction No. 12, the circuit court instructed the jury:

> "The plaintiff's complaint consists of multiple counts.
>
> The issues to be decided by you *** are as follows:
>
> The plaintiff *** claims that she was injured and sustained damage and that the conduct of Dale Monroe was negligent in one or more of the following respects:
>
> * * *
>
> v. *Failed to act as a reasonable person* by failing to warn motorists of the obstruction of Highway B and the dangerous condition caused by his vehicle ***."  (Emphasis added.)

In addition to using the phrase "[f]ailed to act as a reasonable person," the court's instruction departed from the plaintiff's jury instruction L and plaintiff's jury instruction No. 12 by including the issue of whether Meyersick "[f]ailed to reduce the speed of his vehicle as was necessary to avoid a collision" and whether he thereby "was contributorily negligent." Plaintiff disagreed that any evidence had been adduced to support an instruction on contributory negligence.

¶ 18 As in plaintiff's jury instruction Nos. 14 and 15, the circuit court instructed the jury that plaintiff "ha[d] the burden of proving" that Monroe had "acted or failed to act in one of the ways claimed by the plaintiff as stated to [the jury] in these instructions and that in so acting, or failing to act, Dale Monroe was negligent." But the court included some paragraphs on

- 5 -

contributory negligence, explaining what defendant had to prove to sustain that defense. Only by the addition of this language on contributory negligence did the court's instruction depart from plaintiff's jury instruction Nos. 14 and 15.

¶ 19                                                II. ANALYSIS

¶ 20        To reiterate, Meyersick sustained injuries in a traffic accident in Missouri, and he died of his injuries in Quincy, Illinois. Plaintiff, the administrator of his estate, then filed suit in Quincy, in the Adams County circuit court. In its ruling on defendant's pretrial motions *in limine*, the court barred plaintiff from arguing to the jury that Monroe had a duty to warn Meyersick, such as by waving his hands or his cell phone. The court declined to "use Missouri case law to impose a corollary duty to warn approaching motorists of a hazard the driver created on the traveled portion of a highway." Instead, in the court's view, Monroe's duty was to exercise reasonable care under the circumstances.

¶ 21        On appeal, plaintiff maintains that this *in-limine* ruling was erroneous because (1) Missouri law differed significantly from Illinois law and (2) under conflict-of-law principles, Missouri law should have governed. Quoting *Hacker*, 857 S.W.2d at 409, plaintiff argues that, "[u]nder well-settled Missouri law, a driver on a Missouri highway has an affirmative 'duty to warn approaching motorists of a hazard [that the driver] has created on the traveled portion of a highway.' " Plaintiff observes that, under Illinois law, by contrast, "no such affirmative duty to warn exists." Instead, under Illinois law, "[i]t was the duty of the defendant, before and at the time of the occurrence, to use ordinary care for the safety of [the plaintiff] [and] [the plaintiff's property]"—meaning "it was the duty of the defendant to be free from negligence." Illinois Pattern Jury Instructions, Civil, No. 10.04 (2011) (hereinafter IPI Civil (2011) No. 10.04). "Ordinary care" "mean[s] the care a reasonably careful person would use under circumstances similar to those

- 6 -

shown by the evidence." IPI Civil (2011) No. 10.02. "[Illinois] law does not say how a reasonably careful person would act under those circumstances. That is for [the trier of fact] to decide." *Id.* Plaintiff argues,

> "The trial court's failure to recognize and find that Monroe had a duty to warn under well-established Missouri law substantially affected the outcome of the case because[,] instead of the duty to warn being established as a matter of law, the trial court left it up to the jury to decide whether Monroe had an obligation to warn."

In other words, the *in limine* ruling affected the jury instructions, which in turn affected the verdict.

¶ 22 Defendant responds that "[t]he law, as far as the jury is concerned, is contained in the jury instructions" and that "[p]laintiff's 'failure to warn' theory was put before the jury." Defendant quotes, for instance, the instruction that the court gave on count II: "Failed to act as a reasonable person by failing to warn motorists of the obstruction of Highway B and the dangerous condition caused by his vehicle."

¶ 23 Defendant is correct that, with respect to the failure to warn, the circuit court gave essentially the jury instructions that plaintiff had tendered. Plaintiff never tendered an instruction that Monroe had a duty to warn approaching drivers. Instead, she tendered—and the court gave—plaintiff's jury instruction J, which read, "It is the duty of every driver of a vehicle using a public highway to exercise ordinary care at all times to avoid placing others in danger and to exercise ordinary care at all times to avoid a collision." True, the court added the phrase "[f]ailed to act as a reasonable person" to plaintiff's proposed instructions, but that phrase was an insignificant addition considering that the reasonable-person standard already was in plaintiff's jury instructions G and J. Plaintiff complains, on appeal, that "the trial court left it up to the jury to decide whether

Monroe had an obligation to warn." But plaintiff's jury instruction Nos. 14 and 15, which the court gave (with the addition of language on contributory negligence), left this question up to the jury.

¶ 24 Even so, we hold it is irrelevant whether the jury instructions that plaintiff tendered to the circuit court conformed to the interpretation of Missouri law that she now asserts on appeal. The circuit court issued an order *in limine* holding that, instead of having an affirmative duty to warn, Monroe had a duty to exercise ordinary care. That pretrial order settled the question of duty once and for all in the proceedings below. Plaintiff was entitled to rely on that *in limine* ruling and to draft her jury instructions accordingly.

¶ 25 Therefore, the only remaining questions for us are whether Missouri law differed from Illinois law and, if so, whether conflict-of-law principles required the circuit court to apply Missouri law over Illinois law. These are questions of law, which we decide *de novo*. See *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007). We will begin by examining the two Missouri cases that plaintiff cites.

¶ 26 In *Hacker*, Cleo Chadwrick and Joseph Ellebracht were employees of Quinn Concrete Co., Inc. (Quinn). *Hacker*, 857 S.W.2d at 404. They used the travel lane of a highway to switch truck tractors on a semitrailer, thereby causing a chain of traffic accidents. *Id.* at 405. An injured driver, Gary Dean Hacker, sued Chadwrick, Ellebracht, and Quinn for negligently blocking the travel lane of the highway. *Id.* The jury found in Hacker's favor (though apportioning to him 10% of the fault). *Id.* Chadwrick, Ellebracht, and Quinn appealed. *Id.* at 406. One of their arguments on appeal was that the trial court had erred by giving jury instruction No. 8. *Id.* at 407. That instruction read as follows:

" 'In your verdict you must assess a percentage of fault to defendants Quinn \*\*\*, \*\*\* Chadwrick and \*\*\* Ellebracht, whether or not plaintiff is partly at fault, if you believe:

First, either:

Defendant Chadwrick failed to park his truck with the right side as near the right hand side of Route WW as practicable, or

Defendants Chadwrick and Ellebracht failed to warn oncoming traffic on Highway 65 that entrance onto Route WW was blocked, and

Second, defendants Chadwrick and Ellebracht were thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

In assessing such percentage of fault against Quinn \*\*\*, Ellebracht and Chadwrick, you must consider them all as one party and assess only the fault of Ellebracht and Chadwrick as the fault of all.' " *Id.* at 408.

The appellants contended that the failure-to-warn language of this instruction misstated the law and was unsupported by the evidence. *Id.* The Missouri Court of Appeals disagreed. *Id.* at 409. It noted that, in a previous decision, it held, " 'As a general rule, a person who obstructs a roadway with his or her vehicle has a duty to remove it and warn other drivers of the possible hazard.' " *Id.* at 408 (quoting *Pruneau v. Smiljanich*, 585 S.W.2d 252, 254 (Mo. Ct. App. 1979)). Case law " 'recognized [a] caveat' ": " 'there are situations in which both these duties cannot be performed simultaneously.' " *Id.* at 409 (quoting *Pruneau*, 585 S.W.2d at 254). The *Hacker* court found, "[A]ppellants' situation was not such that it prevented one or both of them from warning approaching traffic that their truck was blocking [the highway]." *Id.* Therefore, "[i]t [was] apparent

[that the] appellants did have a duty to warn oncoming traffic" and that jury instruction No. 8 "[did] not misstate the law." *Id.*

¶ 27     In the other Missouri case that plaintiff cites, *Pruneau*, Betty P. Pruneau was driving on a snow-covered highway when the right front passenger wheel of her car slid into a ditch, leaving the rest of her car protruding into the travel lane of the highway. *Pruneau*, 585 S.W.2d at 254. Four of her children were riding with her. *Id.* Pruneau, her eldest daughter, and a young man tried to extricate the car from the ditch, but they were unsuccessful. *Id.* Emil Smiljanich approached in his car. *Id.* Upon reaching the crest of a knoll, he saw Pruneau's car ahead and slammed on his brakes. *Id.* His car skidded into Pruneau's car, allegedly causing bodily injuries to Pruneau. *Id.* Pruneau sued Smiljanich for negligence. *Id.* at 253. The jury found in favor of Smiljanich, but the trial court granted Pruneau's motion for a new trial. *Id.* Because the court gave no rationale for granting a new trial, the order was, under Missouri law, presumptively erroneous. *Id.* On appeal, Pruneau had the burden of rebutting the presumption of error by "proving that the grant of a new trial was predicated on grounds presented in the motion for new trial." *Id.*

¶ 28     Pruneau defended the granting of a new trial by arguing that the trial court had erred by giving jury instruction No. 11. *Id.* That instruction read as follows:

> " 'Your verdict must be for defendant on the claim of Betty P. Pruneau if you believe:
>
> First, plaintiff Betty P. Pruneau's automobile was stopped partially blocking the road and plaintiff Betty P. Pruneau failed to warn eastbound traffic of her car obstructing the road; and
>
> Second, plaintiff Betty P. Pruneau was thereby negligent; and

Third, such negligence of plaintiff Betty P. Pruneau directly caused or directly contributed to cause any damage plaintiff Betty P. Pruneau may have sustained.' " *Id.* at 253-54.

Pruneau contended that this jury instruction "was erroneous because it hypothesized that [she] had an affirmative duty to warn eastbound travelers that her vehicle was obstructing a part of the highway." *Id.* at 254. The *Pruneau* court responded:

"As a general rule, a person who obstructs a roadway with his or her vehicle has a duty to remove it and warn other drivers of the possible hazard. Cases in which this rule has been addressed however, have also recognized the caveat that there are situations in which both these duties cannot be performed simultaneously. *Eastman v. Brackman*, 347 S.W.2d 126, 129 (Mo. 1961). We think this is such a case. Mrs. Pruneau was travelling with four children: a daughter, age 16; a daughter, age 14; a son, age 5; and a son, age 3. The Pruneau auto was in the ditch 5 to 10 minutes prior to the collision. During this time Mrs. Pruneau and her eldest daughter were actively attempting to extricate the auto from the ditch. We cannot say that Mrs. Pruneau's action in staying with the car, and not sending a child up the road on an overcast day to warn oncoming traffic, amounted to a breach of duty. Under the facts here we believe the evidence failed to establish a submissible case of contributory negligence as to a duty to warn by plaintiff. Accordingly, we hold it was error to give such an instruction." *Pruneau*, 585 S.W.2d at 254.

¶ 29        Thus, on the one hand, in *Hacker*, the Missouri Court of Appeals approved a jury instruction to which the jury instructions the circuit court gave in the present case are comparable. Under the jury instruction that *Hacker* endorsed, a failure to warn approaching drivers could

subject the driver to liability only if the jury additionally found that the driver was " 'thereby negligent' " (and that the negligence proximately caused the plaintiff's injuries). *Hacker*, 857 S.W.2d at 408; see Missouri Approved Jury Instructions (Civil) No. 17.01 (8th ed.). Therefore, under the jury instruction in *Hacker*—which, the Missouri Court of Appeals held, "[did] not misstate the law" (*Hacker*, 857 S.W.2d at 409)—there was no duty to warn approaching drivers, but, rather, the duty was not to be negligent. On the other hand, however, the *Hacker* court reaffirmed the holding in *Pruneau* that, " '[a]s a general rule, a person who obstructs a roadway with his or her vehicle has a duty to remove it and warn other drivers of the possible hazard' " unless " 'both these duties cannot be performed simultaneously.' " *Hacker,* 857 S.W.2d at 408-09 (quoting *Pruneau*, 585 S.W.2d at 254).

¶ 30        *Hacker* and *Pruneau* both unambiguously held that, under Missouri law, a driver whose vehicle is stalled on the roadway generally has a duty to remove the vehicle and to warn approaching drivers unless both duties could not be performed at the same time. *Id.*; *Pruneau*, 585 S.W.2d at 254. We take these statements of duty at face value; it is not our role to problematize them. We assume that, in *Hacker* and *Pruneau*, the Missouri Court of Appeals meant what it clearly said. No Illinois case holds that a driver whose vehicle is stalled on the roadway generally has an affirmative duty to warn approaching drivers. Instead, under Illinois law, the duty is to use ordinary care, or not to be negligent. See IPI Civil (2011) No. 10.04.

¶ 31        "[A] choice-of-law analysis begins by isolating the issue and defining the conflict. A choice-of-law determination is required only when a difference in law will make a difference in outcome." *Townsend*, 227 Ill. 2d at 155. The appellate court has interpreted the phrase "make a difference in the outcome" as meaning to yield a different result "regarding the issue in question." *Gleim v. Roberts*, 395 Ill. App. 3d 638, 641 (2009). Applying Missouri law instead of Illinois law

- 12 -

would have yielded a different result as to the issue of duty, and the difference would have been expressed in the jury instructions. Under the jury instructions that the circuit court gave, the duty was ordinary care, and it was for the jury to decide whether Monroe had failed to warn Meyersick and Dolbeare and, if so, whether Monroe thereby had been negligent. By contrast, if the jury instructions had been drafted in accordance with Missouri law, warning approaching motorists would have been the duty, and a breach of that duty would have been negligence *per se*. By instructing the jury under Missouri law, the court would have told the jury that if Monroe failed to warn Meyersick and Dolbeare and if Monroe was not otherwise occupied in attempting to move his truck, the jury had to find that Monroe was negligent.

¶ 32 Having isolated a difference between Missouri law and Illinois law that would make a difference as to the issue of duty, we follow the analysis in *Townsend*. We begin with the "*strong* presumption *** that the law of the place of injury," Missouri, "governs the substantive issues herein." (Emphasis in original.) *Townsend*, 227 Ill. 2d at 166. "We now test this presumptive choice against the principles in section 6 [of the Restatement (Second) of Conflict of Laws (1971)] in light of the contacts identified in section 145(2) [(*id.* § 145(2))]." *Id.* at 166-67. Our purpose is to determine whether "Illinois has a more significant relationship to the occurrence and the parties" than Missouri has. *Id.* at 166.

¶ 33 In its own methodology, the supreme court has "first identified the four contacts listed in section 145(2) and then applied the general principles of section 6 to those contacts." *Id.* at 167. Section 145(2) provides as follows:

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

- 13 -

> (b) the place where the conduct causing the injury occurred,

> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

> (d) the place where the relationship, if any, between the parties is centered.

> These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 145(2) (1971).

¶ 34 First, the injury occurred in Missouri. That fact "raises a presumption in favor of" Missouri law. *Townsend*, 227 Ill. 2d at 168 (citing Restatement (Second) of Conflict of Laws § 146 (1971)). Second, "the place where the conduct causing the injury occurred" likewise is Missouri. Restatement (Second) of Conflict of Laws § 145(2) (1971). Third, the parties reside in Illinois. Fourth, the parties have no relationship with one another. They are merely estate representatives on opposing sides in an Illinois lawsuit. We hold that the Illinois residency of the parties is insufficient to overcome the "strong presumption *** that the law of the place of injury," Missouri, "governs the substantive issues herein." (Emphasis omitted.) *Townsend*, 227 Ill. 2d at 166.

¶ 35 Next, we turn to section 6. According to *Townsend*, 227 Ill. 2d at 170, the factors in section 6 that are relevant to a personal-injury lawsuit are as follows:

> "(b) the relevant policies of the forum,

> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, [and]

> * * *

- 14 -

(e) the basic policies underlying the particular field of law." Restatement (Second) of Conflict of Laws § 6(2)(b), (c), (e) (1971). All three of those factors tend to reinforce the strong presumption that Missouri law should govern this personal-injury action. Illinois has no "relevant policies" on how drivers should conduct themselves on Missouri highways. *Id.* § 6(2)(b). Missouri, on the other hand, has a compelling interest in keeping its highways safe. See *id.* § 6(2)(c). It can be inferred that a policy behind the negligence *per se* rule in Missouri is to deter drivers from allowing their broken-down vehicles to endanger other drivers on Missouri highways. See *id*. § 6(2)(e). Failing to apply Missouri law would tend to weaken that deterrence.

¶ 36 In sum, then, when we test the "presumptive choice" of Missouri law "against the principles embodied in section 6 in light of the relevant contacts identified by the general tort principle in section 145," we find the presumption to be unrebutted. *Townsend*, 227 Ill. 2d at 175. In its *in limine* ruling and in its instructions to the jury, the circuit court should have applied the Missouri law that, "[a]s a general rule, a person who obstructs a roadway with his or her vehicle has a duty to remove it and warn other drivers of the possible hazard" unless "both these duties cannot be performed simultaneously." (Internal quotation marks omitted.) *Hacker*, 857 S.W.2d at 408-09.

¶ 37 III. CONCLUSION

¶ 38 For the foregoing reasons, we reverse the circuit court's judgment and remand this case for a new trial.

¶ 39 Reversed and remanded.